Argued and submitted June 1, affirmed in part,
reversed in part and remanded August 8, 1984

FISHER et al,
*Respondents,*

*v.*

CITY OF GRESHAM,
*Petitioner,*

FISHER et al,
*Respondents,*

*v.*

HALLBERG HOMES, INC.,
*Petitioner.*

(83-105; CA A31388)

685 P2d 486

Matthew R. Baines, Gresham, argued the cause for City of Gresham. With him on the brief was Thomas Sponsler, Gresham.

John M. Wight, Portland, argued the cause and filed the brief for Hallberg Homes, Inc.

Steven L. Pfeiffer, Portland, waived appearance for respondents Kathy Fisher and The Binford Lake Neighborhood Coalition.

No appearance by respondent Geri Williams.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Petitioners seek judicial review of an order of LUBA reversing in part and remanding in part an order of the Gresham City Council (City) approving the application of Hallberg Homes, Inc. (Hallberg) to subdivide a 13-acre parcel into 40 building lots for 20 duplexes. The land is divided into almost equal halves by a creek. A man-made lake of 2.15 acres occupies most of the central part of the site. The proposed access to the lots is by two streets, one on each half of the parcel, each of which intersect with S.W. 19th Drive, a collector street, and each of which ends in a cul-de-sac.

The pending proposal is the final phase of a seven-phase "Binford Farms" Planned Unit Development, which was first approved by the City of Gresham in 1969. The plans for this final phase were submitted in 1982 and were denied by the city council. Hallberg appealed to LUBA, which remanded the proposal to the City. *Hallberg Homes, Inc. v. City of Gresham,* 7 Or Luba 145 (1983). After further proceedings, the City approved the proposal and the Binford Lake Neighborhood Coalition, Kathy Fisher and Geri Williams (Coalition) then appealed to LUBA, which issued the order now before us.

As part of the subdivision approval, the City granted Hallberg hardship relief (variance) from the City's standard that requires a minimum distance of 400 feet between intersections along a collector street. The City found that Hallberg met the criteria for hardship relief under the Gresham Development Code, 10.5120:

> "*Type III Hardship Relief Procedure.* The planning commission may grant hardship relief waiving a specified provision set forth in the Development Standards Document for an individual land parcel under the Type III procedure if it finds that strict application of the requirement would render the parcel incapable of reasonable economic use. The authority to grant hardship relief does not include authority to approve a development that is designed, arranged or intended for use not otherwise approvable in the location. In submitting an application for hardship relief, the proposed development explanation shall provide facts and evidence sufficient to enable findings in compliance with the criteria set forth in this section. * * *

"(1) The circumstances of any hardship are not of the applicant's making.

"(2) The grant of hardship relief will not cause a use of property not otherwise permissible.

"(3) Granting of the hardship relief will not adversely affect implementation of the comprehensive plan.

"(4) The hardship relief authorized will not be materially detrimental to the public welfare or materially injurious to other property in the vicinity.

"(5) The development will occur on a parcel of land that in conjunction with adjacent land in the same ownership is not otherwise reasonably capable of economic use under the provisions of this code so that hardship relief is necessary for the preservation of a substantial property right of the applicant.

"(6) The development will be the same as development permitted under this code and city standards to the greatest extent that is reasonably possible while permitting some economic use of the land.

"(7) Special circumstances or conditions apply to the property or to the intended use that do not apply to other property in the same vicinity."

LUBA disagreed with the City's granting hardship relief, holding that the ordinance does not permit it, because criteria 5 and 6 cannot, as a matter of law, be met by Hallberg. That holding is assigned as error.[1]

---

[1] Petitioners' first assignment is that the Coalition is precluded from raising the hardship relief question, because the City's original order on Hallberg's application specifically granted that variance, although it denied the application for the development as proposed. They contend that the opponents waived that question by failing to raise it on the first appeal to LUBA. On the second appeal, LUBA disposed of that contention by concluding that the hardship relief variance was not severable from or independent of the City's order denying Hallberg's application. Although our review of the record persuades us that the variance was granted as an independent matter, even though it was incorporated in the one order denying Hallberg's application, and that it could and should have been raised by opponents on the first appeal (Fisher intervened), we need not decide that question, given our disposition on the the substantive question presented.

It is clear that the legislative policy in land use cases is that "time is of the essence in reaching final decisions in matters involving land use," ORS 197.805, and that disputes involving land use decisions ought not be decided piecemeal in unending appeals.

LUBA concluded:

"* * * [T]he city code is written in terms barring relief where 'some economic use' of the land is available without relief. The criteria cannot be met in the present instance because, manifestly, Hallberg Homes can make 'some economic use of the land' without offending the intersection spacing requirement. Intensive development of the land may be impossible without relief, as the city's findings indicate, but the hardship relief provisions in the city's code protect 'some economic use,' not intensive development."

LUBA's conclusion does not address the apparent ambiguity as to the economic standard to be applied by the City in granting hardship relief. The preamble to the criteria clearly states that the policy behind granting hardship relief is to foster "reasonable economic use." That language is repeated in criterion 5. The language of criterion 6, on the other hand, appears to prohibit the grant of relief if "some economic use" can be made of the property.

The two standards appear to be in direct conflict. If "some economic use" of the land is the controlling criterion, then the "reasonable economic use" policy of the code must be ignored: if the land may be utilized for *any* economic use, reasonable or not, hardship relief may not be granted. LUBA held that that is what the ordinance provides and that the City could not interpret it any other way.[2]

The City, on the other hand, interpreted criterion 5 as an "economic use criteria" which, according to the policy of the section, authorizes hardship relief in order to promote "reasonable economic use." It reasons that criterion 6 is a "deviation from the standard" that is not controlled by economic considerations but by the extent of the variance. The City's interpretation requires the City to determine first

---

[2] "Although the sequential approach has appeal, it is not reflected in the text of the code itself. Rather, Section 10.5120(6), which employs the strict phrase 'some economic use of the land', is an independent criterion which must be satisfied in each case. We cannot interrelate the two criteria as the city suggests without doing violence to the text.

"In our analysis of this issue we have been mindful of some language in the introduction portion of Section 10.5120 which could suggest the city intended a more liberal variance policy. We would have to read subparagraph 6 out of the section, however, to uphold this aspect of the decision. This we decline to do."

if a variance is necessary in order for reasonable economic use of the land to be made. If so, then the next step is to determine whether the variance requested is the minimum one necessary. In other words, criteria 5 and 6 are interrelated.

■　Although the ultimate duty of intepreting a local ordinance is on the courts, if the ordinance is ambiguous the interpretation of the local body is entitled to weight unless it is clearly contrary to the express language and intent of the ordinance. *Fifth Ave. Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978); *see also 1000 Friends of Oregon v. Wasco Co.,* 68 Or App 765, 686 P2d 375 (1984); *West Hills & Island Neighbors v. Multnomah Co.,* 68 Or App 782, 683 P2d 1032 (1984). In *West Hills,* the code provision was not ambiguous and, although the Board of County Commissioners recognized that fact, it stated that it would not apply it as written. We held that the board could not "interpret" the provision contrary to the express language and intent of the ordinance.

■　Here, the hardship relief provision is internally inconsistent and, as such, is ambiguous. Given that ambiguity, the question is whether the City's interpretation is clearly contrary to the express language of the ordinance. We conclude that it is not, although it could have applied the ordinance as LUBA would have it applied. Therefore, we accept the City's reasonable interpretation of its ambiguous ordinance and hold that LUBA's order is erroneous in substance in imposing its interpretation on the City.

Given the City's interpretation of the hardship relief criteria, the City could conclude that hardship relief was necessary in order for reasonable economic use of the property to be made.

We reverse the portion of LUBA's order that concludes, as a matter of law, that the City is not authorized under its ordinance to grant hardship relief under criteria 5 and 6 of the ordinance. However, LUBA's order does not show whether the City's findings in support of granting hardship relief under criteria 5 and 6 are adequate, assuming the propriety of the City's interpretation of its ordinance, including those criteria. Therefore, we remand to LUBA to determine whether the City's findings are adequate, given our view of the City's authority to interpret its ordinance.

Hallberg further urges that the City's findings under criteria 3 and 4 of the ordinance in question are adequate and that those regarding the environmental scale of the proposed development are also adequate, when the findings are read as a whole. However, the questioned findings do not describe how the Hallberg proposal relates to the criteria in question. *Sunnyside Neighborhood v. Clackamas Co. Comm.,* 280 Or 3, 22-23, 569 P2d 1063 (1977). We find no error in LUBA's analysis of the adequacy of those findings and therefore affirm LUBA's remand to the City for further consideration.

Affirmed in part; reversed in part and remanded.