Argued and submitted February 20, affirmed on petition, reversed and remanded on cross-petition April 17, reconsideration denied June 7, petition for review denied June 25, 1985 (299 Or 314)

MASON,
*Respondent - Cross-Petitioner,*

*v.*

MOUNTAIN RIVER ESTATES, INC.,
*Petitioner - Cross-Respondent.*

(84-072; CA A34500)

698 P2d 529

Gregory S. Hathaway, Portland, argued the cause and filed the briefs for petitioner - cross-respondent.

Robert L. Liberty, Portland, argued the cause for respondent - cross-petitioner. With him on the brief was Stephen C. Hendricks, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Mountain River Estates, Inc. (MRE), petitions for review of the Land Use Board of Appeals' partial reversal and partial remand of Linn County's decision that MRE has a vested right to complete a 111-unit planned unit development (PUD). LCDC and LUBA had held in earlier proceedings that the PUD could not be completed consistently with statewide land use planning goals. The issue, as formulated by the parties, is whether MRE had a "vested right" to complete the PUD, because its development activities were permitted under the applicable county ordinance before MRE was on notice of the goal violation.[1] Respondent Mason cross-petitions, contending that LUBA should have reversed the county's decision outright, rather than remanding it in part. We affirm on the petition and reverse and remand on the cross-petition.

The county established a three-stage approval process for PUDs. MRE received stage 1 approval in early 1980.[2] In June, 1980, the board of county commissioners granted stage 2 approval and at the same time approved MRE's preliminary subdivision plat. At that time the county also took exceptions to Goals 3 and 4 because of anticipated effects of the proposed development on agricultural and forest lands and uses.

■       In August, 1980, the county adopted a comprehensive plan and ordinances that replaced the separate subdivision and PUD ordinances that were in effect in June, 1980.[3] The

---

[1] MRE does not contend that it acquired a vested right to complete the PUD *solely* because of the developmental activities it undertook and the expenses it incurred *before* it obtained stage 2 approval from the county under the ordinance regulating PUDs. *See Clackamas Co. v. Holmes,* 265 Or 193, 197, 508 P2d 190 (1973); *compare Polk County v. Martin,* 292 Or 69, 81 n 7, 636 P2d 952 (1981).

[2] MRE acquired its interest in the property in 1966. At that time the property was unzoned. A series of zoning actions occurred between 1971 and the time MRE submitted its request for stage 1 approval in 1980. None of those zoning actions would have permitted the residential density contemplated by the PUD proposal. Between the time MRE acquired the property and the time it submitted its request for stage 1 PUD approval, it made expenditures aimed at eventual residential development of the property.

[3] There is some confusion in MRE's brief and in LUBA's opinion over which ordinances are relevant. Any rights that MRE could have acquired by virtue of the county's approvals must come from ordinances that were in effect when stage 2 approval was granted. The August, 1980, ordinances were adopted subsequently. Except as noted otherwise, our discussion of and references to the ordinances relate to those in effect in June, 1980.

Goal 3 and 4 exceptions for MRE's property were included in the comprehensive plan, but in February, 1982, LCDC rejected them in a continuance order in the acknowledgment proceedings.

After MRE obtained stage 2 approval, it incurred substantial expenses in connection with the PUD project, principally for road grading and surfacing and for professional services related to planning, applications and governmental approvals.[4] In September and December, 1982, respectively, the county planning commission and the board gave stage 3 approval to the PUD, subject to a "final determination on the Goal 3 and 4 issues." In a March, 1983, order the board again adopted exceptions to Goals 3 and 4 for the PUD site. The order also interpreted the PUD ordinance and stated:

> "[The ordinance provisions] provide clear direction that no building permits or public facilities construction may take place prior to final approval under Stage III of the PUD procedures. Although provisions of the [subdivision ordinance] authorize development between the preliminary and final plat approvals, the nature of the planned unit development process is intended to allow conceptual approval of a plan under Stage II prior to requiring the developer to develop final working plans for ultimate development under Stage III."

That order reaffirmed earlier interpretations of the ordinance that the county had communicated to MRE as the PUD planning progressed. It also made further development contingent on the resolution of any appeals from the order.

---

LUBA's opinion contains citations to both the old and new ordinances and, in at least one instance, the analysis in the opinion appears to turn on an interpretation of the provision in the new PUD ordinance that regulates planning commission action on stage 3 approvals. That provision, however, duplicates in substance the provisions relating to the same matter in the predecessor ordinance. We conclude that any consideration LUBA gave to the 1980 ordinances did not result in different reasoning or conclusions than LUBA would have reached if only the earlier ordinances had been considered. We conclude that LUBA's order, therefore, is not "unlawful in substance" by reason of any significance it attached to the August, 1980, provisions. ORS 197.850(9)(a).

[4] The road costs exceeded $200,000. The county found that MRE's total cost from the time when it acquired its interest through the time LCDC issued its continuance order was $547,107. According to the county's findings, the estimated total project cost of the completed PUD was $1,797,980. Respondent disputes that finding. It is unnecessary for us to consider what the total project cost was.

Mason appealed to LUBA, which remanded the order to the county on the ground that it had not justified the exceptions. *Mason v. Linn County,* 9 Or LUBA 46 (1983).

MRE initiated the present proceeding and requested that the board determine that MRE

> "has a vested right to proceed with this approved PUD irrespective of the Statewide Planning Goals and any changes to the Linn County Comprehensive Plan and Zoning Ordinance which might be necessary to bring these documents into compliance with those Goals."

In August, 1984, the board reversed its earlier interpretations and concluded that the subdivision and PUD ordinances must be read together when both preliminary subdivision and stage 2 PUD approvals are sought and given; that preliminary approval is sufficient under the subdivision ordinance to permit street construction "prior to final plan/plat approval" and "that the most logical way to integrate [the subdivision and PUD] ordinances is to interpret PUD Stage Two approval to be equivalent to preliminary plat approval." MRE claims that, because it had obtained stage 2 approval and had made substantial expenditures before it was on notice that completion of the PUD would violate statewide goals, it had acquired a vested right to complete the development. *See, e.g., Polk County v. Martin, supra,* n 1. Respondent, however, argues that the county's earlier interpretation of its PUD ordinance was correct, that MRE could acquire no vested rights because of its developmental activities and expenditures before it received final stage 3 approval and that it therefore has no vested right to complete the PUD. LUBA agreed with respondent, and MRE's first assignment is that LUBA's ruling was erroneous.

■    LUBA explained:

> "We are unable to accept the county's most recent reading of the PUD and land division ordinances on this question. We are cited to no provision in either document which overrides the explicit prohibition on issuance of building permits prior to Stage 3 (final) PUD approval under [section 28.090 of] the zoning ordinance.[5] That ordinance, taken as a whole, makes

---

[5]MRE argues that

"LUBA's reliance on language in the PUD ordinance prohibiting the issuance

it clear that until Stage 3 review is reached, a proposed PUD is largely conceptual in nature. * * * The ordinance indicates that street plans and other proposed uses are finally approved at the *Stage 3,* not the Stage 2 phase. The entire PUD proposal may be denied at Stage 3 for nonconformance to the governing criteria. *See* Section 26.135, Linn County Zoning Ordinance. Indeed, until the vested rights determination was made, this was the county's own view of the appeal process with respect to [MRE's] project, as portions of the record indicate * * *.

"We agree with petitioner that it would be illogical to permit a PUD developer to establish a pattern of roads and other significant support facilities *before* the approval authority reviewed and finally approved the specific design of a planned unit development. * * * That approach would virtually make Stage 3 approval of the plan a *fait accompli* instead of a procedure for complete review of the final project, as the text of the ordinance strongly suggests.

"We conclude the county zoning ordinance did not authorize MRE to make the improvements detailed in the challenged final order until Stage 3 approval of the PUD was obtained. This aspect of the petition is therefore sustained and requires reversal of the order." (Emphasis in original.)

■     We agree with LUBA's analysis. The county's present position is that the effect of stage 2 and stage 3 PUD approval differ, depending on whether there is, as here, a simultaneous request for preliminary subdivision approval. The relevant ordinances do not support that distinction. Section 28.010 of the zoning ordinance provided, with respect to PUD procedures:

"The purpose of this Article is to prescribe the procedures by which an applicant may secure approval of a Planned Unit Development and prescribe the procedures the Planning Commission and Board of Commissioners may initiate and require Planned Unit Development in certain areas where such type of development is found to be the most reasonable

---

of building permits before stage 3 approval is granted, does not mean public facilities installation cannot proceed."

Even if MRE were correct in its understanding that section 28.090 prohibited only the issuance of building permits, section 28.110 of the ordinance was more comprehensive in its limitations. It provided, as relevant, that "[t]he approved final plan * * * shall control the issuance of all building permits *and shall restrict the nature, location and design of all uses.*" (Emphasis supplied.)

method to insure the objectives of the Comprehensive Plan of Linn County and purposes of this Ordinance. These procedures shall apply to all proposed developments for which a permit is required by Article 29. Whenever such development is subject to the Subdivision Ordinance, the regulations of the Subdivision Ordinance shall *also* be met." (Emphasis supplied.)

Whether or not a proposed subdivision is also involved, a proposed PUD remains subject to the PUD approval procedures. Section 28.010 does not suggest that those procedures apply differently if a particular PUD proposal also is subject to the subdivision ordinance.

■ ■ MRE also argues that LUBA cannot reverse a county's interpretation of its own ordinance unless the interpretation is "clearly contrary to the language and intent" of the ordinance. LUBA's authority to construe the county's ordinance is not subject to such a limitation. *See Gordon v. Clackamas County*, 73 Or App 16, 698 P2d 49 (1985). Moreover, the county's recent interpretation is clearly contrary to the language and intent of the PUD ordinance. The language of that ordinance does not support the construction that if a subdivision is involved the PUD provisions are inapplicable or altered. We reject MRE's first assignment of error.

■ ■ MRE makes six other assignments. Two relate to the time MRE was on notice that the PUD was inconsistent with the goals. MRE acknowledges that its notice issues are viable only if stage 2 approval can give rise to vested rights. It cannot. MRE's other four assignments presuppose that the PUD ordinance permitted MRE's development activities. Our disposition of MRE's first assignment makes it unnecessary for us to address these arguments further.[6]

Respondent's first assignment of error under his cross-petition also turns on LUBA's disposition of MRE positions that presuppose that the development that occurred

---

[6] LUBA has authority to resolve vested rights issues in its review of land use decisions. *Forman v. Clatsop County*, 297 Or 129, 681 P2d 786 (1984). It does not follow that, after LCDC and LUBA have held that a county's approval of a use is inconsistent with the goals, the county may construe its approval as having created a vested right in the use. Nothing in this opinion is intended to comment on MRE's and the county's underlying premise that a county's pre-acknowledgment approval, qualified or unqualified, at any stage could give rise to a vested right if the approval required a goal exception that LCDC had not approved.

was permitted. Although LUBA reversed the county's decision in its ruling on the lawfulness issue, LUBA concluded that its resolution of some of the other issues required a partial remand to the county for further proceedings on those issues. Respondent argues that LUBA's resolution of the lawfulness issue renders the other issues moot and that LUBA's disposition should have been an outright reversal rather than a partial remand. MRE acknowledges that "the practical effect of LUBA's reversal * * * [renders] moot the issue remanded to the County." MRE argues, however, that ORS 197.835(9) requires LUBA to "decide all issues presented to it when reversing or remanding a land use decision." MRE also points out that one of the issues that LUBA remanded to the county involved the sufficiency of the county's findings and that OAR 661-10-070(1)(b)(C)(i) requires a remand under those circumstances.

■■ It is futile for the county to consider on remand how other issues might affect the vested rights determination when LUBA and we have held that a condition precedent to the existence of a vested right is absent. Moreover, the requirement of ORS 197.835(9) that LUBA decide all issues does not mean that LUBA must base its disposition of an appeal on moot issues. *See Perkins v. City of Rajneeshpuram,* 68 Or App 726, 686 P2d 369, *rev allowed* 298 Or 238 (1984). ORS 197.835(1) provides that LUBA "shall adopt rules defining the circumstances in which it will reverse rather than remand a land use decision that is not affirmed." The decision to remand the county's order in part is for LUBA to make in the first instance. On the cross-petition we remand the order for LUBA to reconsider, in the light of this opinion, whether a partial remand to the county is necessary. Accordingly, it is unnecessary for us to address the remaining assignments under the cross-petition.

Affirmed on the petition; on the cross-petition, reversed and remanded to LUBA for reconsideration of the partial remand to the county.