MILL CREEK GLEN
PROTECTION ASSOCIATION et al,
*Petitioners,*

*v.*

UMATILLA COUNTY et al,
*Respondents.*

(LUBA 87-003; CA A45627)

746 P2d 728

Robert L. Liberty, Portland, argued the cause for petitioners. With him on the brief were Richard P. Benner and Neil S. Kagan, Portland.

Peter H. Wells, Legal Counsel, Pendleton, waived appearance for respondent Umatilla County.

Douglas E. Hojem, Pendleton, filed the brief for respondents Klicker Brothers and Robert A. Klicker.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's decision affirming Umatilla County's issuance of a conditional use permit to respondents Klicker for the extraction and processing of rock and gravel. The county found that the Klicker site was an existing gravel pit and was therefore subject to the criteria that the county zoning ordinance establishes for the quarry use of existing pits. Those criteria are different from the standards under the ordinance for permitting quarry operations at new pits.

■    Petitioners contend in their first assignment that the pit cannot be treated as an existing one, as a matter of law, because it was not included in the county's inventory of Goal 5 aggregate resource sites. They maintain that regulating the uninventoried site as an existing pit amounts to a *de facto* amendment of the county's comprehensive plan and inventory through this quasi-judicial land use decision and that the site cannot be treated as an existing pit, unless it is included in the inventory through a plan amendment or in a periodic compliance review pursuant to ORS 197.640 to 197.647.[1]

Petitioners rely for those propositions on *Urquhart v. Lane Council of Governments,* 80 Or App 176, 721 P2d 870 (1986), which they understand as meaning:

> "The only occasion for adding new sites to an acknowledged Goal 5 inventory is as part of periodic plan review. * * * Allowing for the piecemeal amendment of inventories during quasi-judicial land use decisions (which are not even plan amendments) undoes the analysis and policy choices concerning the regulation of conflicting uses which was achieved through the Goal 5 acknowledgment review process." (Citation omitted.)

Petitioners misunderstand *Urquhart.* The opponents of the local land use decision argued there that the challenged use was in conflict with preservation of the land as open space and that, because the area had not been included on the local

---

[1] Umatilla County's comprehensive plan was acknowledged by LCDC. We reversed the acknowledgment order in part in *1000 Friends of Oregon v. LCDC (Umatilla Co.),* 85 Or App 88, 735 P2d 1295, *modified* 86 Or App 364, 738 P2d 1392 (1987). We did not reverse on issues relating to Goal 5.

government's original Goal 5 inventory, the government should be required to apply Goal 5 and reconsider whether the land should be inventoried as open space before authorizing the conflicting use. We disagreed and said:

"Indeed, the converse seems to be true, *i.e.*, the absence of the area from the inventory is what makes it possible for the new designation to be attached to the area without a Goal 5 resolution of the conflict between the area's open space use and the [use authorized by the challenged decision]." 80 Or App at 180.

We then discussed the periodic review procedure as a method through which an amendment of the inventory *could* be compelled, as distinct from the method and the occasion suggested by the opponents of the decision.

Petitioners seem to read *Urquhart* as saying almost the opposite of what it does say. Their understanding is that, because periodic review is a process by which the Klicker site could be added to the inventory and periodic review has not yet occurred, the county cannot authorize the use of the site for purposes which might be in conflict with the uninventoried resource use. Our reasoning in *Urquhart* was that, *because* the site on which there was a putative conflict between resource and non-resource uses was not included on the Goal 5 inventory, the non-resource use authorized by the local government could not be set aside as a violation of Goal 5.

Their misreading of *Urquhart* aside, petitioners' underlying premise is not correct. That premise is that sites which contain Goal 5 resources, but which are not inventoried, must be preserved for resource use until they are inventoried and ESEE analysis is applied to determine whether and to what extent conflicting uses may be allowed. The rule is the opposite. Insofar as this record enables us to know, there was no requirement that the county include the Klicker site in its inventory at the time when it was prepared. *See* OAR 660-16-000(5)(a); *Friends of the Columbia Gorge v. LCDC,* 85 Or App 249, 736 P2d 575 (1987). There was therefore no requirement then, and there is none now, that the county undertake Goal 5 conflict resolution analysis with respect to the site. *See* OAR 660-16-000(5)(a); OAR 660-16-005. Petitioners' first assignment is not well taken.

The second assignment is:

"LUBA erred in not applying the county's definition of 'existing use' and the statutory system it implements when it construed the county's ordinance. Application of that definition and the applicable statutory and appellate case authorities would yield different results as a matter of law, based on the same record."

The thrust of petitioners' supporting argument is that whether the Klicker site is an "existing pit" within the meaning of the county ordinance must be decided by reference to the law of nonconforming uses and that, under applicable Oregon case law, the Klickers could not qualify for a nonconforming use under the facts.

The argument misses the point. The law of nonconforming uses relates to land uses which originated before the adoption of regulations with which they are inconsistent and which, under defined circumstances, may be continued notwithstanding the regulations. The issue here is whether the Klickers' operations qualify as a permitted conditional use under the county's regulations relating to existing pits. There is absolutely no connection between the issue that petitioners discuss and the issue which this case could actually present, had it been raised. The first deals with whether and when a use of land which is contrary to a later enacted regulation may continue to be conducted; the second deals with whether the use is permissible under and complies with the regulation. Petitioners' second assignment is without merit.

■ In their final assignment, petitioners challenge LUBA's conclusion that the law of the case doctrine precludes them from raising certain issues which could have been and were not raised in *Allen v. Umatilla County,* 14 Or LUBA 749 (1986), when LUBA remanded the county's earlier decision allowing the conditional use permit. Petitioners do not appear to dispute LUBA's conclusion that the new issues that they now seek to raise were unaffected by the county proceedings which followed LUBA's remand in *Allen* and that those issues could have been raised in *Allen.* It is also undisputed that at least some of petitioners here were not parties to the earlier LUBA appeal.

LUBA held in *Portland Audubon v. Clackamas County,* 14 Or LUBA 433, *aff'd* 80 Or App 593, 722 P2d 745 (1986), that the law of the case doctrine applies to proceedings

before it. It relied in part on *Fisher v. City of Gresham,* 69 Or App 411, 685 P2d 486 (1984), where we found it unnecessary to decide the question, but commented:

> "It is clear that the legislative policy in land use cases is that 'time is of the essence in reaching final decisions in matters involving land use,' ORS 197.805, and that disputes involving land use decisions ought not be decided piecemeal in unending appeals." 69 Or App at 414, n 1.

We agree with LUBA's decision in *Portland Audubon,* although we consider "waiver" to be a more useful term to define the principle than the even more mystical concept of "law of the case."

Petitioners maintain that, whether or not a law of the case or waiver principle might bar new arguments by parties who participated in an earlier appeal, neither should apply when, as here, different parties bring the second appeal and the appellant in the first was not represented by counsel. We do not think that petitioners' distinction aids them. Although it is true that new parties in a second appeal could not have raised particular issues in the earlier appeal in which they did not participate, it is also true that they did have and did forego the opportunity to participate in the first appeal. A party who did not raise an issue in an earlier proceeding because he chose not to participate in it should be as precluded from later raising the issue as a party who did participate but neglected to raise the issue.[2] We reject petitioners' third assignment.

Affirmed.

---

[2] Petitioners' distinction might have more force if they were able to demonstrate—and they do not attempt to do so—that they *could not* have participated in the first appeal or in the county proceedings which led to it. However, given the very unrestrictive access to LUBA which ORS 197.830(3) provides, *see Jefferson Landfill Comm. v. Marion Co.,* 297 Or 280, 686 P2d 310 (1984), and the similar ease with which participation in local proceedings may be achieved, *see, e.g., Ludwick v. Yamhill County,* 72 Or App 224, 696 P2d 536, *rev den* 299 Or 443 (1985), we cannot assume that petitioners could not have made themselves able to appeal the county's first decision to LUBA.