Argued and submitted July 13, affirmed August 26, reconsideration denied October 14, 1992, petition for review allowed March 23, 1993 (315 Or 643)

Gene COPE,
Harriet Cope, Colleen Donnelly,
Robert Donnelly, Carlyn R. Draneas,
John H. Draneas, Mary Gartshore,
Peter Gartshore, Jack G. Kaady,
Marsha LaFarge, Jack Stutzman,
Sharon Stutzman, Betty Wilson,
Lloyd Wilson, William G. Hay,
Georgiana F. Hay, William J. Allred
and Hallmark Inns & Resorts, Inc.,
*Petitioners,*

*v.*

CITY OF CANNON BEACH,
*Respondent.*

(LUBA 92-019 and 92-020; CA A75091)

836 P2d 775

John H. Draneas, Portland, argued the cause for petitioners Gene Cope, Harriet Cope, Colleen Donnelly, Robert Donnelly, Carlyn R. Draneas, John H. Draneas, Mary Gartshore, Peter Gartshore, Marsha LaFarge, Jack Stutzman, Sharon Stutzman, Betty Wilson, and Lloyd Wilson. Dean H. Alterman, Portland, argued the cause for petitioners William G. Hay, Georgiana F. Hay, William J. Allred and Hallmark Inns & Resorts, Inc. With them on the brief were Draneas & Gregores, P.C., and Kell, Alterman & Runstein, Portland.

No appearance for petitioner Jack G. Kaady.

Mark J. Greenfield, Portland, argued the cause for respondent. With him on the brief were Edward J. Sullivan, Preston Thorgrimson Shidler Gates & Ellis, Portland, and William R. Canessa, City Attorney, and Campbell, Moberg and Canessa, Cannon Beach.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's order upholding the city of Cannon Beach's Ordinance 92-1. The ordinance amended the city's comprehensive plan and zoning ordinance and imposed a prohibition on the rental for money of dwellings for less than 14 days in some residential zones. The ordinance has an "amortization" scheme for phasing out uses that were established between the time of its enactment and the earlier repeal of legislation that contained similar restrictions.

■ Petitioners argued to LUBA and in their first assignment to us that the restriction constitutes a taking without just compensation. LUBA rejected that argument on the ground that the ordinance contains a "hardship relief" provision under which an affected property owner may apply to continue a rental use by showing that investments made exclusively to develop that use cannot be adequately recouped under the other provisions of the ordinance. Therefore, LUBA held, the taking argument is not ripe. We agree. *See Joyce v. Multnomah County*, 114 Or App 244, 835 P2d 127 (1992).

Petitioners contend, however:

> "The so-called 'hardship relief' provided in the challenged ordinance is available only to owners of property where the physical improvements have committed the property to short-term rental use, a standard nearly impossible to meet."

The argument proves too much because, if the property is not committed to short-term rental use, the prohibition could not arguably eliminate all other viable economic uses, such as living in one's own dwelling. Therefore, there *could* be no taking of property that does not meet the threshold criterion for hardship relief that petitioners describe.[1]

Petitioners' other arguments under their first assignment do not require specific discussion.

---

[1] We imply no interpretation of the hardship provision. We assume the correctness of petitioners' premises for purposes of our discussion of their argument.

■ Petitioners contend in their second and third assignments, respectively, that LUBA erred in rejecting their arguments that the ordinance, insofar as it amends the comprehensive plan, violates statewide Goals 8 (Recreational Needs) and 9 (Economic Development). LUBA concluded, and we again agree, that the city's findings reflect a permissible balancing of the needs and values promoted by those goals and the ones promoted by Goal 10 (Housing). *See DLCD v. Yamhill County*, 99 Or App 441, 783 P2d 16 (1989).

■ Petitioners argue in their fourth assignment that the city's restriction constitutes a rent control measure and, as such, is prohibited by ORS 91.225(2). The argument is a word game. The ordinance does not have any bearing on the rent that a lessor may charge.

■ In their next assignment, petitioners contend that the ordinance violates Economy Policies 1 and 2 of the city's acknowledged comprehensive plan and that the city incorrectly interpreted them. The two policies provide:

"The city seeks to achieve a moderate level of controlled growth which permits the city to maintain the important elements of its small town character and preserve its unique natural setting.

"The city's efforts will be directed toward maintenance and enhancement of its existing economic base, which consists of tourism and maintaining residential areas."

The city's findings recite, *inter alia*, this interpretation of those plan policies:

"Cannon Beach has determined it will provide for a moderate level of controlled growth (The Economy Policy 1).

"Tourism is the main element of the city's economy. The city has determined that future economic development must maintain a balance between tourism and the stability of its residential areas (The Economy Policy 2) because tourism has the capability of adversely affecting the city's small town character and its residential areas.

"A loss of the city's small town character and the integrity of its residential neighbors will adversely affect the economic health of the community. It is the charm of the city's commercial and residential areas that attracts persons to Cannon Beach not only as a tourist destination but also as a retirement community.

"The rental of dwelling units for transient occupancy is a commercial use associated with the city's tourism industry. The city has determined that this commercial use in residential areas will adversely affect the character of residential areas and is thus inconsistent with its stated policy of finding a balance between tourist development and the maintenance of residential areas."

The Supreme Court held in *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), that, under ORS 197.835(7)(a)(D),

"LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy. LUBA lacks authority to substitute its own interpretation of the ordinance unless the county's interpretation was inconsistent with that ordinance, including its context." 313 Or at 515.

There being no rational basis for concluding otherwise, we understand that statement in *Clark* also to apply to our scope of review of local interpretations of local legislation under ORS 197.850.

■       In sum, *Clark* establishes a principle of review under which LUBA and the courts may not construe local land use legislation independently but, with limited exceptions, are bound by the interpretations that the local government offers in applying the legislation to particular land use decisions. In doing so, *Clark* appears to overrule implicitly the Supreme Court's decision in *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978), and our decisions in *McCoy v. Linn County*, 90 Or App 271, 752 P2d 323 (1988), *Gordon v. Clackamas County*, 73 Or App 16, 698 P2d 49 (1985), and myriad other cases decided under the authority of the cited ones. We said in *McCoy* that, for the purposes of LUBA's and our review of local comprehensive plans and land use regulations,

"the meaning of local legislation is a question of law which must be decided by the courts and other reviewing bodies to which it is presented. Although the local interpretation must be considered on review, the reviewing tribunal's acceptance or rejection of the interpretation is to be determined solely by

whether, in the tribunal's opinion, the interpretation is right or wrong." 90 Or App at 275-76.[2]

We derived our conclusion from the Supreme Court's statement in *Fifth Avenue*:

> "*The courts are finally responsible*, but we believe that it is the [local governing body] itself, composed as it is of popularly elected local officials directly accountable to their constituency * * * that, in the first instance, should have the power and right to interpret local enactments. *Cf. Green v. Hayward*, 275 Or 693, 706, 552 P2d 815 (1976) (interpretation of county comprehensive plan).

> "*While the interpretation of the [governing body] cannot supplant our duty, that interpretation is entitled to some weight* unless it is clearly contrary to the express language and intent of the [legislation]." 282 Or at 599-600. (Emphasis supplied.)

The *Clark* opinion does not cite *Fifth Avenue, McCoy* or any of the many other cases that deal directly with the same question that it decides. Instead, it relies on *Yamhill County v. Ludwick*, 294 Or 778, 663 P2d 398 (1983), and *West Hills & Island Neighbors v. Multnomah Co.*, 68 Or App 782, 683 P2d 1032, *rev den* 298 Or 150 (1984), where, by the Supreme Court's understanding, LUBA or the courts had rejected local governing body interpretations on the grounds that they were contrary to the language, purpose or policy of the local enactments. The *Clark* opinion appears to reason that, by expressing *those* grounds for reversing the particular local interpretations before them, *Ludwick* and *West Hills* implicitly negated *all other* permissible grounds for a reversal. We read *Ludwick* and *West Hills* differently. Neither case says or implies anything about *limits* on LUBA's or the courts' scope of review of a local interpretation and, unlike *Fifth Avenue, McCoy* and *Gordon*, neither case purports to define the proper scope of review.[3]

---

[2] In cases that predated *McCoy* and *Gordon v. Clackamas County, supra*, we had suggested a narrower scope of review. *See, e.g., Alluis v. Marion County*, 64 Or App 478, 668 P2d 1242 (1983). That suggestion did not survive *Gordon* and *McCoy*.

[3] Neither does *Anderson v. Peden*, 284 Or 313, 587 P2d 59 (1978), the third case on which the court relied in *Clark*. The random comment in *Anderson* that *Clark*

After they are acknowledged as complying with the statewide goals, local comprehensive plans and land use regulations, instead of the goals, become directly applicable to most local land use decisions. The theory is that, if the local legislation complies with state law, its correct application to specific land use decisions will assure their consistency with state law and therefore obviates the need for direct application of the state requirements. Nevertheless, the legislature has expressly provided that, after acknowledgment, the implementation and enforcement of the complying local land use legislation remains a matter of statewide concern. ORS 197.013. The interpretation of local legislation plays a major role in virtually every land use decision, and virtually all local land use legislation is susceptible to different interpretations that are "consistent" with its text. Axiomatically, legislation that complies *facially* with the statewide requirements can be interpreted in ways that are inconsistent with state law. The limited scope of LUBA and court review that *Clark v. Jackson County, supra,* defines may well have the effect of making post-acknowledgment compliance with state law a matter of local option. At the least, it eliminates plenary review of a critical component of local land use decisions by the state agency and courts on which the legislature has conferred review authority in this area of statewide concern. Under *Clark,* the final responsibility is no longer in the courts; rather, LUBA and we are bound by a local government's choice of how to interpret its legislation that *can* be read in more than one way.

---

cites simply applies the holding of the leading case, *Fifth Avenue Corp. v. Washington Co., supra. See* 284 Or at 318, n 3. It adds nothing to and subtracts nothing from the formulation in *Fifth Avenue.*

*West Hills* also relied on *Fifth Avenue,* and its principal conclusion was that LUBA's review of local interpretations of local legislation is not subject to limitations corresponding to those that *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), places on judicial review of state agency interpretations of statutes. The *West Hills* opinion does not deal with any other question concerning the scope of review, except insofar as it follows and discusses the Supreme Court's *Fifth Avenue* opinion.

*Fifth Avenue* involved land use issues that arose before the LUBA statutes were enacted, and it was not a review of a LUBA decision. However, the continuing relevance of its review principles under the current land use statutory scheme has been recognized in our cases and, although with less explanation, in those of the Supreme Court. *See 1000 Friends of Oregon v. Wasco County Court,* 299 Or 344, 369, 703 P2d 207 (1985); *see also 1000 Friends of Oregon v. LCDC (Lane Co.),* 305 Or 384, 390, n 5, 752 P2d 271 (1988).

We are bound by the Supreme Court's decision in *Clark*, and we understand it to overrule, by design or by neglect, *Fifth Avenue, McCoy, Gordon* and their progeny *sub silentio*. If any local interpretation could be reversible under the *Clark* standard, this one is not. The language, purpose, policy and "context" of the two plan policies are so general that the city may interpret them as it did or in almost any other way. Petitioners' fifth assignment therefore fails.

Petitioners maintain in their sixth assignment that the city's findings are insufficient to support its conclusion that Ordinance 92-1 is consistent with the two policies. We disagree, and we reject the assignment.

We reject petitioners' seventh assignment without discussion.

Affirmed.