Argued and submitted March 31, vacated and remanded with instructions to
enter judgment declaring parties' rights as to first claim for relief in a manner
consistent with this opinion; otherwise affirmed December 15, 2010

Douglas NORWOOD,
Myrtle Norwood,
James Smejkal,
and Richard Titus,
*Plaintiffs-Appellants,*

*v.*

WASHINGTON COUNTY,
*Defendant-Respondent.*

Washington County Circuit Court
C080648CV; A141547

245 P3d 659

William C. Cox argued the cause for appellants. With him on the brief was Gary P. Shepherd.

Christopher A. Gilmore, Senior Assistant County Counsel, argued the cause for respondent. With him on the brief was Office of Washington County Counsel.

Before Landau, Presiding Judge, and Ortega, Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

This case presents another question about the meaning of Measure 49, the referendum that replaced Measure 37 and altered its remedies for a reduction in property value caused by a land use regulation. In particular, Measure 49 changed the legal effect of any state or local government waiver of restrictive land use regulations that had been obtained as a Measure 37 remedy ("Measure 37 waiver"). Plaintiffs obtained a Measure 37 waiver from the county in order to allow residential development of their property. Following the adoption of Measure 49, the county denied plaintiffs' subdivision application because the waiver was no longer effective under Measure 49.

Plaintiffs then filed an action against the county, claiming that the Measure 37 waiver was a contract between them and the county, and demanding damages for the breach of that contract. Plaintiffs also sought a declaration from the court that the Measure 37 waiver of land use regulations for their property and their subsequent efforts to develop that property created a vested right to develop the property that is recognized under Measure 49. The trial court granted the county's summary judgment motions and determined that plaintiffs were not entitled to relief on either claim.

On appeal, plaintiffs claim that the trial court erred in concluding that their Measure 37 waiver did not create a contract between them and the county and in determining that their activities and expenditures were insufficient to vest a right to develop the property. We rejected plaintiffs' first contention in *Smejkal v. DAS*, 239 Or App 553, 246 P3d 1140 (2010). We reject plaintiffs' latter contention as well and agree with the trial court that plaintiffs are not entitled to declaratory relief.[1]

---

[1] We note that the trial court's judgment dismissed both the breach of contract claim and the claim for declaratory relief. The dismissal of a declaratory relief claim does not decide the claim.

"When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim, however, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits."

We set out the legal context for this case from the discussion in *Friends of Yamhill County v. Board of Commissioners*, 237 Or App 149, 238 P3d 1016 (2010) (*Friends*). Like *Friends*, this case involves an original law and its replacement, both adopted by the voters, that provide remedies to landowners whose property values are adversely affected by land use regulations. The original law, Measure 37, was adopted through the initiative process in the 2004 general election and initially was codified at ORS 197.352 (2005). The law was subsequently amended, Or Laws 2007, ch 424, § 4, and, in 2007, it was renumbered as ORS 195.305. Measure 37 required state and local governments to provide "just compensation" to a property owner when a governmental entity enacted or enforced a post-acquisition land use regulation that restricted the use of the property in ways that reduced its fair market value. *Former* ORS 197.352(1). Under the measure, that regulatory effect allowed an affected landowner to demand just compensation from the government. If a claimant qualified for relief, the governmental entity could respond in one of two ways: either by paying the claimant the amount of the reduction of the property's value, *former* ORS 197.352(2), or by deciding to "modify, remove, or not to apply the land use regulation * * * to allow the owner to use the property for a use permitted at the time the owner acquired the property," *former* ORS 197.352(8). In the subsequent adjudication of Measure 37 claims, the exercised choice to exempt property from otherwise applicable regulations and allow a specified use became known as a "Measure 37 waiver."

The 2007 Legislative Assembly referred to the voters a substitute statute, Measure 49. Measure 49 set out a different compensation allowance for a reduction in fair market value caused by a post-acquisition land use regulation, and reduced the degree of residential development allowed under a previously requested Measure 37 waiver. Or Laws 2007, ch 424; *see generally Corey v. DLCD*, 344 Or 457, 184 P3d 1109 (2008) (describing the purpose and effect of Measure 49). The measure was adopted by the voters in a special

*Doe v. Medford School Dist. 549C*, 232 Or App 38, 45-46, 221 P3d 787 (2009). We follow that practice in this case.

election held on November 6, 2007, and became effective on December 6, 2007. Or Const, Art IV, § 1(4)(d) (time of effect of initiated or referred measures).

Measure 49 changes the adjudicatory processes, approval standards, and extent of relief for two classes of Measure 37 claims: those filed on or before June 28, 2007 (the concluding day of the 2007 legislative session) and those filed thereafter. As to the former class of claims, section 5 of the measure provides:

"A claimant that filed a claim under ORS 197.352 on or before the date of adjournment sine die of the 2007 regular session of the Seventy-fourth Legislative Assembly [June 28, 2007] is entitled to just compensation as provided in:

"(1) Sections 6 or 7 of this 2007 Act, at the claimant's election, if the property described in the claim is located entirely outside any urban growth boundary and entirely outside the boundaries of any city;[2]

"(2) Section 9 of this 2007 Act if the property described in the claim is located, in whole or in part, within an urban growth boundary;[3] or

"(3) A waiver issued before the effective date of this 2007 Act [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

The question in this case concerns the meaning and application of section 5(3) of Measure 49. The relevant facts, as set out in the summary judgment record, are not contested. Plaintiffs Norwood[4] purchased a 28-acre tract of property in rural Washington County in 1962. The property was not zoned

---

[2] Section 6 requires approval of up to three lots, parcels, or dwellings under certain circumstances. Section 7 permits discretionary approval of up to 10 homesites under a more narrow set of circumstances.

[3] Section 9 provides that owners of property within the urban growth boundary of a city may qualify to develop one to 10 single-family dwellings under specified circumstances.

[4] There are four plaintiffs in the case. Douglas and Myrtle Norwood are the original purchasers of the subject property and the claimants for the Measure 37 waivers. James Smejkal and Richard Titus acquired interests in the property on November 13, 2006.

at that time. Much later, the property was rezoned "EFC" (Exclusive Forest and Conservation) by the county as required by state law. The EFC zoning and other county land use regulations do not allow residential development on the parcel.

Following the adoption of Measure 37, the Norwoods filed claims for just compensation under *former* ORS 197.352(5) with the state and the county. They asserted that the regulations applied by the state and county after their purchase of the property depressed its value by preventing residential use of the property. The county allowed the claim against it and opted to waive land use regulations under *former* ORS 197.352(8) on March 20, 2007. As just noted, that part of Measure 37 gave the county an option to avoid payment of "just compensation" for the claim by opting to "modify, remove, or not to apply the land use regulation or land use regulations to allow the owner to use the property for a use permitted at the time the owner acquired the property." The county waived certain parts of its community development code that restricted residential development of the property and that were adopted after its acquisition by the Norwoods.[5]

The particular use of the property requested by the Norwoods and conditionally allowed by the county was to "divide the property into maximum lots allowed when the property was first acquired, make legal each of the existing dwellings on [the] site on an individual lot, build a dwelling on each vacant lot, and develop a community water system to serve the development." The county findings note that the necessary minimum lot size was unknown at that point, as well as whether the claimants could obtain a water right for the community water system. Given that uncertainty, the findings cautioned that

---

[5] The county waiver did not waive portions of its community development code that related to the "protection of public health and safety" and that restricted residential development, because those portions were exempted from the requirements of Measure 37 under *former* ORS 197.352(3)(B) (requirement to pay just compensation does not apply to land use regulations "[r]estricting or prohibiting activities for the protection of public health and safety"). The regulations that were not waived and that could restrict residential development of the property included those imposed by the mineral and aggregate overlay district zoning provisions and the code provisions on fire siting and safety standards.

"[a] subsequent development review application for the land division and proposed dwellings will be required, and the appropriate minimum lot size for the proposed lots will be determined as part of the decision on [the] application. For the parcels in the EFC District, the application will also address the fire siting criteria, the extent of impacts to surrounding properties and how those impacts should be mitigated to address public health and safety standards and any other applicable requirements."

The county waiver imposed a number of conditions on the allowance of the proposed use set out in the waiver, two of which are relevant here. Consistent with the findings just noted, condition 4 provided, in part:

"The Claimant's proposed development requires a subsequent Type II land use application that meets all current regulations other than those waived by this claim as well as applicable criteria in effect at the time the property was acquired."

Condition 1 required:

"The Claimant must seek relief under Measure 37 from any applicable statutes, rules or goals and provide evidence of the same prior to submitting an application for a development or building permit. Potentially applicable state law requirements include but are not limited to: (1) ORS 215.720 governing forest dwellings; (2) ORS 215.263 governing land divisions[;] (3) the minimum eighty (80) acre lot size required by ORS 215.780(1)(a), and the applicable requirements under Divisions 6 of Chapter 660 of the Oregon Administrative Rules governing forest lands."

As noted earlier, the Norwoods applied for a waiver of state land use statutes and regulations from the Department of Land Conservation and Development (DLCD). DLCD did not issue the waiver before December 6, 2007, the time that Measure 49 went into effect and mooted the state waiver request.[6] Plaintiffs did not seek a development permit or a grading permit for the site. Plaintiffs did file a completed application for a tentative subdivision plat for 17 lots on November 1, 2007. That application was denied by the

---

[6] Measure 49 required a new application for benefits for previously filed Measure 37 waiver requests. Or Laws 2007, ch 424, §§ 5-11.

county hearings officer on March 27, 2008, because the proposed subdivision was inconsistent with the revived and applicable zoning.

Plaintiffs began activities on the property to prepare it for residential uses in 2007. According to the adopted findings of the hearings officer on the proposed subdivision, there was unpermitted logging on the property in June and grading without an erosion or grading permit in July. The county allowed roadbed construction without permits after September 24 in order to prevent soil erosion. Electrical conduit was installed without an electrical permit. In the summary judgment proceedings, plaintiffs' attorney declared that experts had been retained who would testify that expenditures were incurred by plaintiffs to prepare the tentative subdivision plat application and to grade the property and install utilities.

After the denial of the tentative subdivision plat application, the Norwoods filed their complaint in January 2008. They later amended the complaint to add another claim and to join the other plaintiffs. As amended, the complaint sought declaratory relief that plaintiffs have a "vested right to continue Ballot Measure 37 approved waiver development on their property" and damages for breach of the county's contract with plaintiffs to allow the residential development permitted by the waiver. The county moved for summary judgment on both claims pursuant to ORCP 47. Plaintiffs filed a cross-motion for summary judgment on the breach of contract claim. The trial court granted the county's motion for summary judgment, denied plaintiffs' cross-motion, and entered judgment dismissing plaintiffs' claims. This appeal followed.

On appeal, plaintiffs renew their arguments that Measure 37, and the parties' actions to implement the measure, resulted in a contractual promise by the county not to apply Measure 49 to plaintiffs' property. At best, plaintiffs' argument concerns enforcement of an alleged contractual promise of the state through its adoption and implementation of Measure 37. The county did not adopt Measure 37 and promise anything through that enactment. The state is not a party to this case. In its absence, plaintiffs do not explain how any claim that the state breached or impaired its contract is

justiciable. *See* ORCP 29 (joinder of persons needed for just adjudication). Moreover, we decided whether Measure 37 operated to create a state contract adversely to plaintiffs' contentions in *Smejkal*, 239 Or App at 558-60. The trial court did not err in dismissing plaintiffs' claim for breach of contract.

■        Plaintiffs also contend that the court erred in concluding that they do not have a vested right claim to develop the subdivision under section 5(3) of Measure 49. Again, that section provides:

> "A claimant that filed a claim under ORS 197.352 on or before * * * [June 28, 2007] is entitled to just compensation as provided in:
>
> "* * * * *
>
> "(3) A waiver issued before [December 6, 2007] to the extent that the claimant's use of the property complies with the waiver and the claimant has a common law vested right on the effective date of this 2007 Act to complete and continue the use described in the waiver."

(Bracketed dates added.)

Plaintiffs argue that the summary judgment record before the court established that there are issues of fact about whether they qualify for a vested right and that they are not precluded from obtaining that relief as a matter of law. Plaintiffs contend that they are entitled to a determination that they had vested rights to develop the subdivision if they obtained "[a] waiver" from the county and made substantial expenditures in reliance on that waiver. Plaintiffs conclude that the court erred in granting summary judgment to the county on this issue because they did obtain a waiver and presented sufficient evidence to create issues of fact on the substantiality of their related expenditures.

The county responds that plaintiffs never obtained a "common law vested right" to develop a subdivision because their development activities were not a lawful use of the property so as to qualify as a vested use. The county contends that the use of the property for residential development was not lawful without a waiver of land use laws prohibiting that use from the state and without preliminary subdivision approval from the county. In addition, the county asserts that

plaintiffs' use of the property was in bad faith and therefore insufficient to establish a vested right, because plaintiffs used the property without obtaining the approvals required under the county waiver. We agree that section 5(3) requires a use of the property that is consistent with the waiver and that there is no issue of fact that plaintiffs' use of the property was inconsistent with that waiver. Consequently, the trial court was correct in concluding that plaintiffs were not entitled to relief under section 5(3) as a matter of law.

We discussed the requirements of section 5(3) in *Friends*. We noted:

> "The plain text of that section provides that a claimant is 'entitled to just compensation as provided in * * * [a] waiver issued' before December 6, 2007. However, the 'extent' of that entitlement is limited in two separate ways: (1) by requiring that the claimant use the property consistently with the waiver and not for some other kind or degree of use; and (2) by whether, and the extent to which, the use described in the waiver has vested under the common law. Put another way, the use must not only 'vest' under the common law; the text imposes a separate requirement that the property be used as described in the waiver."

237 Or App at 166-67. We determined that " 'use of the property' means the actual employment of land for a residential purpose." *Id.* at 167. Elaborating further, we explained that some of the factors used to determine the existence of a "common law vested right" are also pertinent to the separate standard that the "use of the property complies with the waiver:"[7]

---

[7] The general tests for whether a land developer has acquired a vested right to complete or continue a development were set out in *Clackamas Co. v. Holmes*, 265 Or 193, 508 P2d 190 (1973):

> "The test of whether a landowner has developed his land to the extent that he has acquired a vested right to continue the development should not be based solely on the ratio of expenditures incurred to the total cost of the project. We believe the ratio test should be only one of the factors to be considered. Other factors which should be taken into consideration are the good faith of the landowner, whether or not he had notice of any proposed zoning or amendatory zoning before starting his improvements, the type of expenditures, i.e., whether the expenditures have any relation to the completed project or could apply to various other uses of the land, the kind of project, the location and ultimate cost. Also, the acts of the landowner should rise beyond mere contemplated use or preparation, such as leveling of land, boring test holes, or preliminary negotiations with contractors or architects."

265 Or at 198-99 (citations omitted).

"Thus, the phrase 'claimant's use of the property complies with the waiver' requires that all claimants under section 5(3) proceed with some degree of good faith by acting consistently with the waiver and expend some money on the employment of land for a specific development that is allowed under the waiver and not some other use, a nonadaptable expenditure that goes beyond generic preparation of the land for any use."

*Id.* at 176-77.

Under those tests, plaintiffs did not employ their land for a residential purpose in a manner that was consistent with the county waiver. The waiver conditioned any residential development, including the construction of roads and utilities for residential purposes, on the county's approval of a land use permit ("The Claimant's proposed development requires a subsequent Type II land use application that meets all current regulations other than those waived by this claim * * *."), as well as the obtaining of a state Measure 37 waiver ("The Claimant must seek relief under Measure 37 from any applicable statutes, rules or goals * * * prior to submitting an application for a development or building permit."). Because plaintiffs lacked the predicate county permit and a Measure 37 waiver from the state, plaintiffs' use of the property did not comply with the county's Measure 37 waiver. Accordingly, the trial court did not err in concluding that plaintiffs did not qualify for relief under section 5(3) of Measure 49.[8]

Vacated and remanded with instructions to enter judgment declaring parties' rights as to first claim for relief in a manner consistent with this opinion; otherwise affirmed.

---

[8] Our disposition of the case makes it unnecessary to decide whether plaintiffs separately failed to qualify for a vested right to complete and continue their residential use of the property under section 5(3) because their use was unlawful or in bad faith in the absence of the required predicate land use permits and Measure 37 waiver from the state. *See Mason v. Mountain River Estates,* 73 Or App 334, 698 P2d 529, *rev den,* 299 Or 314 (1985) (vested rights not established by expenditures before final development approval by county); *Cyrus v. Board of County Commissioners,* 226 Or App 1, 18-20, 202 P3d 274 (2009) (Sercombe, J., concurring) (vested rights established only by lawful actions and good faith expenditures).