Argued and submitted August 26, 1981, affirmed in part;
remanded in part April 26, 1982

# CITY OF MEDFORD,
*Petitioner - Cross-Respondent,*

*v.*

# JACKSON COUNTY,
*Respondent - Cross-Petitioner.*

## (No. 80-115, 80-116, CA A20726)

643 P2d 1353

Eugene F. Hart, Jr., City Attorney, Medford, argued the cause and filed the briefs for petitioner - cross-respondent.

John L. DuBay, County Counsel, Medford, argued the cause and filed the brief for respondent - cross-petitioner.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

The parties both appeal from a final order of the Land Use Board of Appeals (LUBA).[1] The City of Medford (Medford) appeals LUBA's order affirming Jackson County's action classifying some land owned by Medford as GI-OSR-20, which is a dual classification indicating a comprehensive plan designation of general industrial and a zoning designation of open space reserve - 20 acre minimum. Jackson County (County) cross-appeals LUBA's order that the establishment of the "White City Urban Containment Boundary" was improper in certain respects.

Medford owns about 700 acres of vacant land in Jackson County located five miles from the city's limits and near the Crater Lake Highway between Medford and Eagle Point. In 1967, Medford began industrial development of the property. The land is held primarily for investment. It is not within or adjacent to any urban growth boundary and is outside the developed industrial area within the White City Urban Containment Boundary.

The White City area is an unincorporated part of Jackson County with substantial commercial, industrial and residential development. It is located on both sides of Crater Lake Highway, two and one-half miles north of Medford and the Medford Urban Growth Boundary. The area has a full range of existing public facilities and services such as sewer, water, telephone, gas, electricity and elementary schools. Police services are provided by the County, and fire protection is provided by Central Point Rural Fire Protection District.

Before adopting a new comprehensive plan and zoning ordinance, the County held several hearings, including one on July 30, 1980, at which Medford presented testimony on the proposed GI-OSR-20 zoning classification of the city's land. On August 29, 1980, the County adopted the comprehensive plan and zoning ordinance. On the same date, the County adopted a combined comprehensive plan

---

[1] LUBA's final opinion and order incorporate determinations made by the Land Conservation and Development Commission dated March 24, 1980, on the goal issues. *See* Oregon Laws 1979, ch 772, §§ 5, 6 (amended by OR Laws 1981, ch 748, §§ 5, 6).

and zoning map, classifying Medford's land as GI-OSR-20. Medford appealed the County's adoption of the White City Urban Containment Boundary to LUBA, contending the designation of the Boundary violated statewide planning Goals 5, 9, and 14. LUBA affirmed the county's action against the city's challenges based on Goals 5 and 9, but apparently remanded the matter on the basis of Goal 14.

■     The first issue raised by Medford is whether the County followed its own procedures in classifying the city's land. Medford contends that the County comprehensive plan and zoning ordinance requires that the zoning designation be the same as the comprehensive plan designation, unless the land is classified as an "area of special concern" and certain quasi-judicial procedures are followed. The issue of whether the property was properly given a dual classification is complicated because of differing and ambiguous language in the comprehensive plan, the zoning ordinance and the ordinance adopting the comprehensive plan.

Section 5 of County Ordinance No. 80-17, which adopted the comprehensive plan, provides:

> "In most instances, the plan map designation and the zoning map designation are the same. The plan map and zoning map designation may differ in those instances where an area of special concern has been identified and applied upon the adoption of this ordinance as authorized in Section 280.110[2] of the Jackson County Zoning Ordi-

---

[2] Section 280.110 of the Jackson County Zoning Ordinance, in relevant part, provides:

"A) Areas of special concern generally consist of the following:

"1) Areas where a distinction between the comprehensive plan designation and zoning designation is necessary to accommodate a future stating strategy for future land use actions, or to prevent conversion of certain lands from a resource to a nonresource use, shall be indicated on the official plan and zoning map with both plan and zoning designations.

"2) Areas where specific policy concern(s) must be successfully addressed by all applicants for a land use action prior to approval by the county. Such policies may be linked in addition to the imposition of site plan review requirements specified in Chapter 282 of this ordinance;

"3) Areas in which planned unit development permits are required in order to meet a specific concern identified by the Planning Commission.

"4) Areas in which specific natural resource or environmental concern must be addressed;"

*nance; or the land may well be suited for a use for which there may be a long term need, but the current need for such use has not been demonstrated.* (Emphasis added.)

Phrased in the disjunctive, section 5 indicates that dual classification is proper even when the area has not been designated as an area of special concern.

Here, the County could have reasonably concluded that, although Medford's land was not currently needed for "general industrial" use, at some future date it might be. In the interim, the land would carry the more restrictive zoning designation of open space reserve - 20 acre minimum. Evidence in the record supports this interpretation, which is not contrary to the express language of the ordinance adopting the comprehensive plan and would constitute a valid interpretation by the County of its own ordinance. *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 599-600, 581 P2d 50 (1978); *Cascade Broadcasting Corp. v. Groener,* 51 Or App 533, 626 P2d 386, *rev den* 291 Or 117 (1981).

■ The second issue raised by Medford is whether the County should have formally adopted findings of fact and statements of reasons to demonstrate that its classification of the city's land was made in accordance with statewide planning goals. The asserted purpose of findings in cases such as this is to provide the reviewing agency or court an adequate basis for determining whether proper procedures were followed and proper legal standards applied. *See Green v. Hayward,* 275 Or 693, 704, 552 P2d 815 (1976). LUBA found the record supporting the County's zoning decision adequate, because the zoning designation was dictated by the County's comprehensive plan policies, specifically policy 7 of the rural and suburban land section. Because policy 7 controlled the County's decision, LUBA concluded:

"No findings showing alternative uses and reasons for choosing one over the other are needed. The plan policy dictates the choice."

Medford contends that LUBA disregarded the principle that statewide goals prevail over comprehensive plan policies, citing *Alexanderson v. Polk County Commissioners,* 289 Or 427, 616 P2d 459 (1980). *Alexanderson* is

inapposite in the present situation, however, because LUBA did not hold, nor has Medford demonstrated, that policy 7 conflicts with statewide goals.

■   When the County made its decision on the city's land, evidence indicated that the property was vacant, that no need existed in the County for additional industrial land and that the County had adopted a policy that existing rural industrial areas outside of urban growth boundaries should not be expanded except for fill-in development. The record also discloses the size, physical condition, existing uses and other characteristics of the land itself. Our review is confined to the record, and we may not substitute our judgment for that of LUBA on any issue of fact. Or Laws 1979, ch 772, § 6a(7), (amended by Or Laws 1981, ch 748, § 6a(7).

In its cross-appeal, the County contends that LUBA erred in apparently holding that the County violated Goal 14 in establishing the White City Urban Containment Boundary. In concluding its discussion of whether the statewide goals were violated by the adoption of the urban containment boundary, LUBA states:

> "The combined requirements of Goal 14 relative to city-county cooperation in adopting an urban growth boundary and Goal 2 requirements for coordination require that the decision to allow intensification of use outside an urban growth boundary on non-resource lands must not undermine the effectiveness of adjacent urban growth boundaries."

The County argues that Goal 14 did not apply to its action because the nature of the White City area does not fit within the Goal 14 definitions of urban, urbanizable or rural land.[3]

---

[3] The definitions section of the Statewide Planning Goals and Guidelines, at 24, states:

"Urban areas are those places which must have an incorporated city. Such areas may include lands adjacent to and outside the incorporated city and may also; (a) Have concentrations of persons who generally reside and work in the area (b) Have supporting public facilities and services.

"Urbanizable lands are those within the urban growth boundary and which are identified and (a) Determined to be necessary and suitable for future urban areas (b) Can be served by urban services and facilities (c) Are needed for the expansion of an urban area.

Both parties to this appeal agree that it is difficult to determine the rationale underlying LUBA's decision. It is unclear whether LUBA based its decision on a violation of Goal 2 or Goal 14. LUBA's decision does state that existing development outside urban growth boundaries must be recognized, that expansion of urban-type uses on resource lands must be established through a Goal 2 exception process and that expansion of urban-type uses on lands outside urban growth boundaries must be consistent with other applicable goals. The decision also states that Goal 14 requires assessing the impact that industrial development outside urban growth boundaries would have on lands inside such boundaries. LUBA's opinion fails to disclose, however, whether the County, in establishing the urban containment boundary, adequately met Goal 14's requirements, or in what respects the action of the County was deficient.

■ ■ It is not the function of this court to clear up confusion created by LUBA. Policies of judicial economy and administrative efficiency dictate that, for us to review actions taken by administrative bodies, we must be provided with decisions that contain clearly articulated findings, conclusions and orders. *Home Plate, Inc. v. OLCC,* 20 Or App 188, 190-91, 530 P2d 862 (1975); *see Green v. Hayward, supra,* 275 Or at 706-08. Therefore, we remand to LUBA the issues raised in the County's cross-appeal for clarification consistent with this opinion.

The County also objects to LUBA's decision requiring that the County make specific findings addressing the impact the urban containment boundary would have on nearby urban growth boundaries. Because LUBA'S disposition is closely related to the County's first assignment of error, we also remand this issue.

Affirmed as to issues raised by Medford; remanded as to issues raised by Jackson County for clarification of

"Rural lands are those which are outside the urban growth boundary and are: (a) Non-urban agricultural, forest and open space lands or (b) Other lands suitable for sparse settlement, small farms or acreage homesites with no or hardly any public services, and which are not suitable, necessary or intended for urban use."

LUBA's position on whether the County, in adopting the urban containment boundary, adequately met the requirements of Goal 2 and Goal 14, and in light of that clarification to determine whether the County was required to make specific findings addressing the impact of the disputed boundary on nearby urban growth boundaries.