Argued and submitted March 30, affirmed June 27, reconsideration denied September 14, petition for review denied October 23, 1984 (298 Or 150)

# WEST HILLS & ISLAND NEIGHBORS, INC.,
*Respondent - Cross-Petitioner,*

*v.*

# MULTNOMAH COUNTY et al,
*Petitioners - Cross-Respondents.*

## (83-018; CA A29111)

683 P2d 1032

Andrew Jordan, Portland, argued the cause for petitioners - cross-respondents. With him on the briefs was Lawrence Kressel, Deputy County Counsel, Portland.

Jay T. Waldron, Portland, argued the cause for respondent - cross-petitioner. With him on the brief were James M. Finn,

and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Petitioners Multnomah County and Metropolitan Service District (Metro) appeal and respondent cross-appeals from LUBA's remand of the county's allowance of a "community service use," enabling Metro to locate a regional landfill in a rural area known as the Wildwood site.

The county acted pursuant to section 11.15.7015 of the Multnomah County Code, which provides:

"In approving a Community Service use, the approval authority shall find that the proposal:

"(A)    Is consistent with the character of the area;

"(B)    Will not adversely affect natural resources;

"(C)    Will not conflict with farm or forest uses in the area;

"(D)    Will not require public services other than those existing or programmed for the area;

"(E)    Will be located outside a big game winter habitat area as defined by the Oregon Department of Fish and Wildlife or that agency has certified that the impacts will be acceptable;

"(F)    Will not create hazardous conditions; and

"(G)    Will satisfy the applicable policies of the Comprehensive Plan."

The Board of County Commissioners stated in its order that it considered

"a strict interpretation [of the section 11.15.7015 criteria] to be inappropriate in this case. This proposal involves a regional landfill sponsored by a regional governmental agency. The Board's review of the proposal is guided by provisions of the Comprehensive Plan which expressly acknowledge Metro's authority and responsibility related to the subject matter of this case. There is persuasive evidence in the plan that the county's intention is to give substantial weight to site selection decisions made by Metro. Strict or literal interpretation of the very general [community service use] approval criteria would make this virtually impossible."

LUBA disagreed with that approach. It noted that nothing in the county's comprehensive plan or ordinances provides different criteria for the siting of solid waste disposal facilities than for other community service uses. LUBA then prefaced the dispositional portions of its order by stating:

"[W]e believe [section 11.15.7015] should be applied consistently no matter what use is proposed. That is, the county has made a legislative determination that sanitary landfills and certain other uses are to be subjected to the scrutiny of the community service designation criteria. Had the county wished to ease one or more criterion for a particular kind of use it should have said so in the Ordinance." (Footnote omitted.)[1]

LUBA concluded, *inter alia,* that the county's decision violates subsections (A), (B), (C), (F) and (G) of section 11.15.7015. Petitioners assign error to those conclusions, and respondent cross-appeals from other rulings by LUBA. We find no reversible error and conclude that, with one exception, it would serve no purpose for us to supplement LUBA's opinion with our own discussion of the parties' contentions. The exception is petitioners' first assignment of error, in which they contend generally that LUBA should have deferred to the county's interpretation and, specifically, that LUBA's review of local governing bodies' interpretations of local legislation should accord with the standards established by *Springfield Education Assn. v. School Dist.,* 290 Or 217, 621 P2d 547 (1980), for judicial review of agency actions.

*Springfield* may be summarized, for purposes of this opinion, as holding that agency responsibility for interpreting statutory terms becomes greater, and judicial review of agency interpretations becomes more circumscribed, as the terms progress from "precise" ones requiring nothing more than factual application through "inexact" ones requiring interpretation "for consistency with legislative policy" to "delegative" terms that "require legislative policy determination by the agency." 290 Or at 223-30. Petitioners argue that the same relationship should apply to LUBA and local governing bodies in connection with the interpretation of legislation enacted by those bodies.

The Supreme Court and this court have stated on several occasions that the courts should give some deference to local government interpretations of local comprehensive plans and land use legislation. The most frequently cited

---

[1] LUBA suggested a number of times in its order that the county's ordinance and other county enactments are unduly restrictive of petitioners' ability to site the landfill.

authority for that principle is *Fifth Avenue Corp v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), where the court said:

> "The courts are finally responsible, but we believe that it is the [local governing body] itself, composed as it is of popularly elected local officials directly accountable to their constituency * * * that, in the first instance, should have the power and right to interpret local enactments. *Cf. Green v. Hayward,* 275 Or 693, 706, 552 P2d 815 (1976) (interpretation of county comprehensive plan).
>
> "While the interpretation of the board cannot supplant our duty, that interpretation is entitled to some weight unless it is clearly contrary to the express language and intent of the [legislation]." 282 Or at 599-600.

LUBA accords the same deference as the courts to local interpretations. *See City of Medford v. Jackson County,* 57 Or App 155, 159, 643 P2d 1353 (1982).

■        However, it is a long way from *Fifth Avenue* to *Springfield.* The former states that courts, in performing the interpretive function for which *they* "are finally responsible," should give "some weight" to local governing bodies' interpretations of local legislation. *Springfield* deals with the much more basic question of what comparative interpretive responsibility the legislature has conferred on courts and on the agencies whose actions the courts review under the Administrative Procedures Act (APA).

Petitioners rely on *Thieland v. Multnomah Cty.,* 4 Or LUBA 284 (1981), where LUBA concluded that the *Springfield* review framework applied to LUBA's own consideration of the county's ordinance. LUBA explained:

> "We recognize that *[Springfield]* dealt with the responsibility of a state administrative agency in applying its statute and the responsibility of a court in reviewing the agency's application of the statute. We see no practical difference, however, between the dual roles discussed in [Springfield] and the dual roles of local governing bodies and this Board in the context of the making and review of land use decisions. Just as a state agency is bound by its governing statute, a governing body such as a county is bound by and must properly interpret and apply its own ordinances. * * * While a court's responsibility in review of a state agency's decision is to determine whether 'the agency has erroneously interpreted a provision of law' (ORS 183.482(8)(a)), this Board's responsibility is to

determine whether the governing body 'improperly construed the applicable law' (1979 Oregon Laws, ch 772, sec 5(4)(D))." 4 Or LUBA at 287 n 1.[2] (Citations omitted.)

■ We think that the quoted statement from LUBA's *Thieland* opinion and petitioners' argument here miss the point. *Springfield* established review principles to fit the relative roles the legislature intended to assign to courts and to agencies in interpreting the legislature's language. Stated otherwise, *Springfield's* objective was to implement the legislature's allocation of interpretive authority in a very particular context, not to state broad principles of judicial review that are applicable outside that context. In the APA scheme, the same body that conferred jurisdiction on the courts to review agency actions also created the agencies and vested them with varying degrees of authority under various statutes to implement or flesh out legislative policy. Nothing comparably fundamental limits the scope of LUBA's and our review[3] of local governing bodies' interpretations of their own legislation. The deference that the Oregon cases have said should be given to such interpretations is more a principle of judicial efficiency than an expression of the kind *Springfield* makes about the scope of judicial authority. *See Green v. Hayward,* 275 Or 693, 705-06, 552 P2d 815 (1976).

■ We reject petitoners' argument. Applying the principle of *Fifth Avenue* and related cases, we agree with LUBA's conclusion that the county's interpretation is contrary to the express language and intent of the ordinance. As LUBA suggested, what the county did here was an attempt to achieve by interpretation what could only be accomplished by an amendment of its ordinance. *See* n 1, *supra.*

Affirmed.

---

[2] Or Laws 1979, ch 772, § 5, *as amended by* Or Laws 1981, ch 748, § 36, was repealed by Or Laws 1983, ch 827, § 59. LUBA's authority to reverse or remand a local land use decision if the governing body "improperly construed the applicable law" is now provided by ORS 197.835(8)(a)(D).

[3] Or Laws 1979, ch 772, § 6a(8)(A), *as amended by* Or Laws 1981, ch 748, § 37, authorized this court to reverse or remand an order of LUBA that is "unlawful in substance." That section was repealed by Or Laws 1983, ch 827, § 59, but the same review authority is retained under ORS 197.850(9)(a).