Argued and submitted August 15, affirmed on petition and cross-petition
September 14, reconsideration denied November 10, 1988, petition for review
withdrawn January 10, 1989 (307 Or 326)

## STANDARD INSURANCE COMPANY,
*Respondent - Cross-Petitioner,*

*v.*

## WASHINGTON COUNTY,
*Respondent Below,*

*and*

## LLOYD POWELL AND ASSOCIATES,
*Petitioner - Cross-Respondent.*

(LUBA 88-005; CA A48889)

761 P2d 534

Lawrence R. Derr, Portland, argued the cause for petitioner - cross-respondent. With him on the briefs was Weiss, DesCamp & Botteri, Portland.

Jacob Tanzer, Portland, argued the cause for respondent - cross-petitioner. On the brief were Jack L. Orchard and Ball, Janik & Novack, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioner seeks review of and respondent cross-petitions from LUBA's remand of Washington County's comprehensive plan map amendment redesignating petitioner's property from industrial to neighborhood commercial (NC). Petitioner sought the change to allow the development of a supermarket and shopping center on property located at the intersection of N.W. Walker Road and N.W. 185th Avenue. Respondent owns undeveloped land at 185th Avenue and Cornell Road, which is in the vicinity of petitioner's site and which is designated community business district (CBD). Uses of the kind planned by petitioner are permissible in the CBD as well as in the NC zone.

Both parties make two assignments of error. We agree with the conclusions and reasoning of LUBA which are challenged by petitioner's second assignment and by both of respondent's assignments of error. No discussion of those assignments is warranted. County concluded that petitioner had supported its application by demonstrating a "lack of appropriately designated suitable alternative sites within the vicinity for [the] proposed use," as required by implementing strategy (g)(ii) to county's Comprehensive Framework Plan (CFP) Policy 1.[1] LUBA rejected that conclusion, and

---

[1] Implementing strategy (g) provides:

"A quasi-judicial plan amendment to the Community Plan Maps, including the implementing tax maps, shall be granted only if the Review Authority determines that the proponent has demonstrated that the proposed designation conforms to the location criteria of the Comprehensive Framework Plan, the Community Plan Overview and sub-area description and design elements, complies with the regional plan, and demonstrates that the potential service impacts of the designation will not impact the built or planned service delivery system in the community. This is a generalized analysis that in no way precludes full application of the Growth Management Policies to development permits as provided in the Code. In addition, the proponent shall demonstrate one of the following:

"i. A mistake in the current designation such that it probably would not have been placed on the property had the error been brought to the attention of the Board during the adoption process;

"ii. A lack of appropriately designated suitable alternative sites within the vicinity for a proposed use. Factors in determining the suitability of the alternative sites are limited to one of the following:

"a. Size: suitability of the size of the alternative sites to accommodate the proposed use; or

"b. Location: suitability of the location of the alternative sites to permit the proposed use."

petitioner's first assignment concerns that ruling. County determined that, although the proposed use is permissible on respondent's property, that property is not a suitable alternative site for the use. County further concluded that the change in designation and the supermarket-shopping center use on petitioner's property would be allowable, even if respondent's site were a suitable alternative, because respondent's property would then be the only suitable alternative site and the implementing strategy refers to "sites" rather than "site."

■      County based its conclusion that respondent's property is not a suitable alternative site on the fact that it is zoned CBD and there are now no NC zones in the planning area. County explained in its "findings":

> "It was not and is not the Board's interpretation that grocery-based convenience shopping facilities are generically inappropriate in the CBD District. Our interpretation of the Plan is a narrow one: CBD district sites will not be considered as alternative sites under CFP Policy 1, implementing strategy (g) when there are NO Neighborhood Commercial (NC) designated sites within the relevant planning area.

> "* * * * *

> "In order to insure that those neighborhood convenience needs are met, the Board concludes that where demographics warrant, each planning area must include an adequate number of NC designated sites to insure that the needs the NC designation is intended to satisy are met. Although these needs *could* be satisfied by CBD designated sites, prudent planning policy does not permit the Board to rely on CBD sites alone to appropriately satisfy convenience needs. CBD sites are located based upon criteria that vary from those used to locate NC sites. Due to the number of commercial uses allowed within the CBD District, there are no assurances that CBD sites will in fact be developed to satisfy identified neighborhood needs. In short, each planning area must include a sufficient number of NC sites, with appropriate locations and sizes. That is not the case in the Sunset West Community Planning Area." (Emphasis in original.)

LUBA rejected that reasoning, because:

> "The county's position as stated in its findings is simply not reflected in the county's plan. While the county's findings regarding the desirability of requiring there be an NC site on each planning area make sense and reflect a reasonable and

prudent planning policy, this policy is not expressed in the plan or implementing ordinances. The county, therefore is neither obliged nor permitted to use it. If the county wishes to adopt such a policy as part of its plan, it must do so."

We agree with LUBA. Implementing strategy (g) relates to redesignations which particular proponents seek, *inter alia,* in order to conduct particular uses at particular locations. The provision is not designed to serve as a planning mechanism whereby county can make general revisions to its zoning scheme or its zoning philosophy in response to site-specific applications for redesignations.

■ Given the purpose of the implementing strategy, we disagree with county's and petitioner's understanding that the term "appropriately designated," which precedes the words "suitable alternative sites," enables county to conclude that a site is not a *suitable* alternative location for a *use* because, for reasons unrelated to the application, the county prefers a *zone* which differs from that of the alternative site. In context, "appropriately designated" refers to zones in which the proposed use is permissible, not to zones which have additional attributes which county deems desirable for reasons unrelated to the use. County's basis for concluding that respondent's property is not a suitable alternative site has nothing to do with its suitability for the use and has nothing to do with strategy (g)(ii). The conclusion rests instead on county's perception that an NC zone in the area is desirable from a planning standpoint. That may be so, but this is not the proceeding and strategy (g)(ii) is not the vehicle for the planning decision which county wishes to make. *See West Hills & Island Neighbors v. Multnomah Co.,* 68 Or App 782, 787, 683 P2d 1032, *rev den* 298 Or 150 (1984).

■ County also concluded that a proponent can satisfy its burden of demonstrating a lack of alternative sites if it shows that there is only one suitable alternative, because the plural word "sites" in subsection (g)(ii) means that a proposed use is permissible at the proponent's location unless there is more than one suitable alternative site for it. The county governing body reasoned:

"The alternative sites criterion obligates the Applicant to show:

" 'A lack of appropriately designated suitable alternative sites within the vicinity of the proposed use.'

"The criterion reflects a policy that more than one site shall be available to accommodate any identified need. This policy is also reflected in C[F]P Policy 20 relating to the urban area economy and in Statewide Planning Goal 9 - Economy of the State, both of which obligate the County to strengthen the local economy through designation of 'an adequate amount of commercial and industrial land to ensure choice in the marketplace.' CFP Policy 20, Implementing Strategy 2(b).

"Even if the Board assumes that the CBD designated Standard Insurance site is appropriate to meet the grocery-based convenience shopping needs identified by the Applicant * * * without the Applicant's site there is only one site within the Planning Area to meet an identified need. The plan requires choice in the market place, not monopoly.

"This Board is not in a position to dictate the only location within a community Planning Area where a specific use will be developed. To take such a position would violate Policy 20 implementing strategy (b), Goal 9 and Policy 1 implementing strategy (g). Accordingly, it is appropriate to conclude that there is a lack of appropriately designated sites for grocery based neighborhood shopping centers in the Sunset West Community Planning Area."

LUBA disagreed, and so do we, albeit for reasons which differ somewhat from LUBA's.[2] *See* note 3 *infra.* County's effort to construe strategy (g)(ii) in the light of the Policy 20 "choice in the marketplace" and adequate commercial and industrial land objectives disregards the fact that the objectives of strategy (g)(ii) are very different. Strategy (g) in general, and subsection (ii) in particular, are concerned with growth management and limiting sites where uses may be conducted. The objectives of Policy 20 and of strategy (g) are not complementary; however, it is neither inconsistent nor unusual for one plan provision to promote the allocation of adequate land for particular uses and for another provision to regulate where those uses may take place.

Nothing in the language or logic of strategy (g)(ii), or

---

[2] We also disagree with petitioner's view that we should accept county's interpretation *ipso facto. See McCoy v. Linn County,* 90 Or App 271, 752 P2d 323 (1988), and authorities there cited.

in county's reasoning, supports its conclusion that a redesignation and a use *must* be allowed on a particular site unless there is more than one suitable alternative site for the use in the vicinity. County's interpretation of "sites" is a *reductio ad absurdum:* under it, county would be *required* to redesignate petitioner's property and allow the use on it if there were only one suitable alternative site, even if that site were an undeveloped parcel already zoned NC, immediately adjacent to and having the same characteristics as petitioner's property, which the owner wanted to use for a supermarket and shopping center complex.

■    The parties direct us to no legislative history or other information which sheds light on what the authors of the implementing strategy intended by the use of the plural "sites." We do not think that they intended either of the extremes urged by the parties, *i.e.,* that a redesignation and use automatically qualifies under subsection (ii) unless there is more than one suitable alternative location or that an application cannot satisfy the subsection if there is any suitable alternative site. The more sensible and likely reason for the word choice was to avoid mechanical and inflexible tests of that kind and to avoid the singular word "site" for the very reason that it could lend itself only to such a test. We conclude that the word "sites" and the language of implementing strategy (g)(ii) as a whole provide county decisionmakers with an adaptable standard that enables them to evaluate how a particular application to conduct a use at a particular site is affected by the existence of one or more suitable alternative locations in the vicinity. The number of suitable alternative sites is one of several related factors, *e.g.,* their proximity to the proposed site, the likelihood of the use being initiated on them, the relative characteristics of the proposed and alternative sites for purposes of the use and the nature of the use, all of which should logically be—and we think the authors of implementing strategy (g)(ii) intended to be—considered together.

■    Although subsection (ii) does give county that flexibility, its overriding purpose is to restrict the expansion of uses into new areas in a vicinity where there is existing land to accommodate them. We conclude that, if there is any suitable alternative site for a use, a proponent's showing under subsection (ii) must demonstrate why other factors outweigh the

existence of the available alternative and justify the installation of the use on the proposed site. If county agrees with the proponent, its findings or statement of reasons must make the same demonstration.

Affirmed on petition[3] and on cross-petition.

---

[3] Our interpretation of the implementing strategy leads to the same disposition as LUBA's but requires different considerations and actions by county on remand.