Argued and submitted October 1, affirmed November 7, 1990

Bernard BRIDGES
and Vince Milligan,
*Respondents,*

*v.*

CITY OF SALEM,
*Respondent,*
*and*

Ric McNALL,
*Petitioner.*

(LUBA 90-035; CA A66142)

800 P2d 302

Richard C. Stein, Salem, argued the cause for petitioner. With him on the brief was Ramsay, Stein & Feibleman, P.C., Salem.

Wallace W. Lien, Salem, argued the cause and filed the brief for respondents Bernard Bridges and Vince Milligan.

No appearance for respondent City of Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

■       Petitioner seeks review of LUBA's remand of the City of Salem's comprehensive plan and zoning map amendments that would change the designation of a vacant 8-acre tract in West Salem from single family to multifamily residential, thereby enabling petitioner to locate a multiple unit residential facility on the property. LUBA concluded that the city had not demonstrated that the redesignation satisfied the criteria for minor plan changes set forth in its Revised Code section 64.090(b):

> "(2)   There is an overriding public need which is best served by the proposed change; [and]
>
> "(3)   The plan does not otherwise make adequate provision to accommodate the public need[.]"

There is more land now designated or available for multifamily use in the city as a whole than is necessary to meet projected needs through the year 2005. Moreover, there is vacant developable land already designated for multifamily use in West Salem, and there is also land designated for multifamily development that is now the site of older single family dwellings. LUBA concluded that the city's findings had not overcome the "obvious hurdle the current surplus of multifamily designated property poses in demonstrating an overriding public need warranting designation of additional property for multifamily development." Specifically, LUBA rejected the city's "assumption" that 12 percent of the land designated multifamily residential should be situated in West Salem, corresponding to the percentage of the city's population that resides there. LUBA explained:

> "[W]e find no plan policies supporting the city's population-based assumption. To the contrary, the plan policies emphasize provision of a variety of housing types, proximity of multifamily housing to necessary public facilities and the city core, and compatibility with adjoining residential uses. Residential Policy 17 provides:
>
> > " 'The jurisdictions will determine specific criteria for the location of multifamily development and specify the location and intensity of residential development for subareas as a result of completing plans for facility development such as sector plans, and completing plans for neighborhood redevelopment, such as renewal and in-fill studies, and neighborhood plans.'

"Under the city's plan, land for residential development in general and land for multifamily development in particular, is to be designated based on such considerations as public facilities, neighborhood plans, renewal and in-fill studies, sector plans — not according to the proportionate population of designated subareas. Therefore, the city's assumption that 12% of the additional multifamily housing needed in the city by the year 2005 is needed in West Salem, simply because 12% of the city population currently lives in West Salem, is unjustified."

LUBA also concluded that the city's findings did not demonstrate that other properties in West Salem, already planned or zoned for high density residential use, could not accommodate any public need that might exist. On the basis of its conclusions, LUBA held that the city has not demonstrated that the criteria of sections 64.090(b)(2) and (3) are satisfied by the plan amendment.

In his first assignment, petitioner takes issue with LUBA's rejection of the city's 12 percent of the population formula. He contends that that formula reflected a policy choice that the city was entitled to make. Although petitioner does not appear to frontally challenge LUBA's conclusion that Residential Policy 17 requires other factors to be considered, he says:

"At the time of LCDC acknowledgment in 1982, the [plan] planned for Salem's future needs to the maximum extent possible based on the information available at that time. The City no doubt thought that it had enough RM land, in West Salem, and otherwise, in compliance with Residential Policy 17 quoted by LUBA and other portions of its comprehensive plan. The problem is that the situation has changed. As the City's findings quoted above note, Salem is experiencing an 'historic' shortage of multifamily housing. If it is 'historic,' it is unprecedented and, therefore, could not be anticipated in formulating the [plan]. It thus falls clearly into the type of situation where the City of Salem intended its plan to be flexible."

It is axiomatic that changes in circumstances after the adoption of a comprehensive plan must be accommodated through plan amendments, rather than through non-compliance with the supposedly obsolete provisions. *See West Hills & Island Neighbors v. Multnomah Co.,* 68 Or App 782, 683 P2d 1032, *rev den* 298 Or 150 (1984). However, petitioner

contends that Salem's plan has built-in flexibility that would permit it to adopt the multifamily residential designation without adhering to Residential Policy 17. Petitioner relies, *inter alia,* on Residential Development Policy 16:

"Requests for rezonings to higher intensity residential uses to meet the identified housing needs will be deemed appropriate if adequate water, sewer, storm drainage, police, fire, school, transportation and park facilities and services can reasonably be made available at levels adequate to serve the more intensive use unless it is found through findings of fact that the proposed use should not be permitted because of overriding site or location conditions."

■    LUBA concluded, and we agree, that that and other city provisions evincing a liberal approach to rezoning relate only to rezoning and have "no applicability where the issue is whether the *plan* designation should be changed." (Emphasis in original.) Petitioner observes that, "[b]ecause the plan map and zoning map are the same, a rezone necessarily involves a comprehensive plan change." If petitioner's point is that the overlap between plan and zone changes means that the unrestrictive rezoning standards become applicable to plan amendments, he has things backwards.

We reject petitioner's first assignment. His second and third assignments challenge certain ways that LUBA interpreted and applied sections 64.090(b)(2) and (3) of the Salem Revised Code. We agree with LUBA's conclusions and its reasoning in those particulars.

Affirmed.