Argued and submitted October 30, 2019, affirmed February 5, 2020

M & T PARTNERS, INC.;
Pacific Realty Associates, L.P.;
PacTrust Realty, Inc.;
Shari Reed;
Costco Wholesale Corporation;
and City of Salem,
*Respondents,*

*v.*

John MILLER,
Lori Meisner, and
William Dalton,
*Petitioners.*

Land Use Board of Appeals
2018143; A172068

460 P3d 117

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA). In that order, LUBA remanded the City of Salem's (city) denial of respondents' site plan review to build a shopping center that included a Costco store. Petitioners, opponents of the development, argue that LUBA erred for two principal reasons. First, they contend that LUBA did not properly defer to the city's interpretation of its prior comprehensive plan and zone change approval. Second, they contend that representations made during that prior rezone process were implicitly incorporated into the subsequent conditions of approval and, accordingly, the city correctly denied the site plan review because it did not comport with those representations. *Held*: LUBA did not err. First, LUBA was not required to defer to the city's interpretation of its prior rezone approval. Second, under the circumstances presented here, the representations made during the rezone process did not alter the conditions of approval.

Affirmed.

Karl G. Anuta argued the cause for petitioners. Also on the brief were Law Office of Karl G. Anuta PC and Cary Allen.

Wendie L. Kellington argued the cause for respondents M & T Partners, Inc., Pacific Realty Associates, L.P., PacTrust Realty, Inc., Shari Reed, and Costco Wholesale Corporation. Also on the joint brief were Kellington Law Group, PC, Robert Koch, David J. Petersen, and Tonkon Torp LLP.

No appearance for respondent City of Salem.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kistler, Senior Judge.

MOONEY, J.

Affirmed.

MOONEY, J.

Petitioners seek judicial review of a final order of the Land Use Board of Appeals (LUBA). In that order, LUBA remanded the City of Salem's (city) denial of respondents'[1] site plan review to build a shopping center that included a Costco store. Petitioners, opponents of the development who intervened below, argue that LUBA erred for two principal reasons. First, they contend that LUBA did not properly defer to the city's interpretation of its prior comprehensive plan and zone change approval. Second, they contend that representations made during that prior rezone process were implicitly incorporated into the subsequent conditions of approval and, accordingly, the city correctly denied the site plan review because it did not comport with those representations. We conclude that LUBA was not required to defer to the city's interpretation of its prior rezone approval and that, under the circumstances presented here, the representations made during that rezone process do not alter the conditions of approval. Accordingly, we affirm.

## I.   FACTS

A.   *2006 and 2007 Rezone Proceedings*

In 2006, respondent Pacific Realty Associates, L.P. (Pacific Realty), filed a Comprehensive Plan Change/Zone Change application seeking to change the zoning of an 18.4-acre parcel of property in Salem from residential agriculture (RA) to retail commercial (CR) and to change the Salem Area Comprehensive Plan (SACP) designation from developing residential to commercial (the 2007 rezone). Pacific Realty planned to develop the property in conjunction with an abutting 10-acre property, for a total of 28.4 acres. During those proceedings, much of the debate centered on whether the plan and zone change application satisfied criterion 1 of *former* Salem Revised Code (SRC) 64.090(b)(1) (2006). That ordinance required Pacific Realty

---

[1] Respondents to this judicial review include M & T Partners, Inc.; Pacific Realty Associates, L.P.; PacTrust Realty, Inc.; Shari Reed; and Costco Wholesale Corporation. For ease of reference, we describe them collectively as "respondents." The City of Salem, which is also listed as a respondent, did not submit any argument to this court on judicial review. Therefore, any reference to "respondents" as a collective does not include the city.

to prove a "lack of appropriately designated suitable alternative sites within the vicinity for [the] proposed use."[2] In its review, the city first determined that the "proposed use" was for "a Community shopping and service facility consisting of up to 299,000 square feet of [gross leasable area (GLA)]." The city then determined that the vicinity selected by Pacific Realty was "appropriate, reasonable and consistent with the City's standard." *See generally Standard Insurance Company v. Washington County,* 16 Or LUBA 30, 40 (1987), *aff'd*, 93 Or App 78, 761 P2d 534 (1988) (LUBA has concluded that, where no specific criteria establish how the vicinity must be determined, an area that is reasonable and that does not violate the local government's policies may be designated as the vicinity for a particular proposed use).

Opponents[3] of the 2007 rezone made several arguments against the application, including that the vicinity identified by Pacific Realty was incorrect and that it should have included "the whole city and the [urban growth boundary (UGB)]."

The city rejected that argument. Referring to the SACP and to City Council Resolution 87-136, the city concluded that the development was, by definition, *not* a "regional facility" within the meaning of the SACP and, therefore, a smaller vicinity was appropriate.[4]

---

[2] *Former* SRC 64.090 (2006) provided, in relevant part:

"(b) Before making any minor change the deciding body shall be satisfied that the following criteria are met:

"(1) A lack of appropriately designated suitable alternative sites within the vicinity for a proposed use. Factors in determining the suitability of the alternative sites are limited to one or both of the follow[ing]:

"(A) Size: Suitability of the size of the alternative sites to accommodate the proposed use; or

"(B) Location: Suitability of the location of the alternative sites to permit the proposed use."

[3] It is unclear from the record whether the opponents of the 2007 rezone are the same individuals as petitioners on judicial review.

[4] City Council Resolution 87-136 defined the terms "regional retail and employment center" and "regional commercial or retail center" as including, among other things, a development composed of "300,000 square feet or more of gross leasable space." The application proposed a shopping center with less than 300,000 GLA.

The opponents alternatively argued that the vicinity analysis must include consideration of the "market area" of the stores to be built and that, when that was considered, it would be clear that, although respondents stated that they were proposing a "community" facility in their application, in reality they had proposed a regional facility. Therefore, a larger vicinity was required.

In response, the city first noted that LUBA had already rejected the "market area" argument in *Salem Golf Club v. City of Salem*, 28 Or LUBA 561, 573 (1995). On the merits of that argument, the city explained that "[u]sing a 'market area' of particular stores for the 'vicinity' analysis area for a plan amendment is inconsistent with the context in which the term 'vicinity' is used." Accordingly, the city rejected the opponents' "market area" definition of "vicinity."[5]

Ultimately, the city conducted an in-depth analysis and concluded that there were no alternative sites that were appropriately designated within the vicinity of the subject property and, thus, criterion 1 of *former* SRC 64.090(b)(1) was satisfied. In the end, the city approved the application with 17 conditions of approval in 2007 (the 2007 decision). Relevant to this appeal is condition 14,[6] which provides:

"The subject 18.4 acre property shall be developed with a retail shopping center. The maximum amount of gross leasable area (GLA) for the retail shopping center on the subject property shall be 240,000 GLA. If the subject property is developed in conjunction with the abutting 10.08 acre property (for simplicity referred to as a 10.0 acre property) currently owned by the Salem Clinic (083W12C tax lot 702 5.5 acres and 083W11D tax lot 600 4.58 acres), the total amount of retail GLA and medical/dental offices on the two properties shall not exceed 299,000 GLA. As such, the total GLA for a shopping center and offices on the combined properties[,] if developed together, shall not exceed 299,000

---

[5] In the alternative, the city further concluded that, "based on the evidence in the record that it does not matter how vicinity is defined for purposes of this minor plan change, as that there is a lack of appropriately designated suitable alternative sites for the proposed use within the City or even the southeastern part of the UGB."

[6] The other 16 conditions of approval all related to traffic improvement projects and landscaping. Condition 14 is the only condition that related to the type and extent of development on the subject property.

GLA. The City shall have the right to enforce this condition through the enforcement procedures in its code or through a post acknowledgement plan amendment using required City and state procedures restoring the Residential plan designation and RA zone to the property."

LUBA upheld that decision following an appeal. *Lufkin v. City of Salem*, 56 Or LUBA 719 (2008). Respondents then began work intended to satisfy the conditions of approval, such as expending more than $3.75 million toward widening nearby roads and traffic lanes.

B.   *2018 Site Plan Review*

In 2018, respondents applied for a site plan review approval pursuant to SRC 220.005(b)(3) ("Class 3 site plan review is required for any development that requires a building permit, and that involves a land use decision or limited land use decision, as those terms are defined in ORS 197.015."). Under the applicable criteria,

"[a]n application for Class 3 Site Plan Review shall be granted if:

"(A)   The application meets all applicable standards of the [Uniform Development Code (UDC)];

"(B)   The transportation system provides for the safe, orderly, and efficient circulation of traffic into and out of the proposed development, and negative impacts to the transportation system are mitigated adequately;

"(C)   Parking areas and driveways are designed to facilitate safe and efficient movement of vehicles, bicycles, and pedestrians; and

"(D)   The proposed development will be adequately served with City water, sewer, stormwater facilities, and other utilities appropriate to the nature of the development."

SRC 220.005(f)(3). When reviewing the application for compliance with applicable UDC standards and conditions of approval incorporated into the 2007 decision, the city planning administrator (administrator) noted that "[t]he applicant is requesting to develop a new retail shopping center,

including four proposed retail shell buildings, a 168,550 square foot building for Costco Wholesale, and a retail fueling station with up to 30 pump positions." He further concluded that the "combined gross leasable area for the shopping center development site is approximately 227,856 square feet, less than the maximum amount of gross leasable area allowed for the subject property."

As part of the review process, the administrator received and reviewed comments from interested parties. Among the comments received were concerns that "the proposed Costco is not a compatible use with the surrounding residential area" and that other locations "may be better suited for the proposed Costco." The administrator addressed those concerns when he called attention to the 2007 decision and condition 14 in particular and explained that "[t]he proposed Costco use is classified as a retail sales use, and is an outright permitted use in the CR (Retail Commercial) zone. The shopping center, including the proposed Costco, is consistent with previous conditions of approval, and the use and development standards of the CR zone." The administrator thereafter approved the site plan.

Opponents of the shopping center, petitioners to the current review, appealed that decision to the Salem City Council (council). They argued, among other things, that the proposal, specifically the Costco, was not permitted on the property because of "the prior procedural and substantive findings made to support the" 2007 decision. The council held a public hearing, took public testimony, reversed the decision of the planning administrator, and ultimately denied the site plan application.

The council denied the application for two reasons. First, it concluded that respondents had not met specific tree preservation requirements under SRC 808.030. Second, the council concluded that the 2007 decision precluded a Costco from being developed on the site because, in its view, a Costco would be a regional facility and therefore was inconsistent with earlier representations that the proposed development would be limited to a community shopping center. The council concluded that the proposal did not "comply

with all applicable standards of the UDC" as required by SRC 220.005(f)(3)(A) and denied the application.

## C.  *LUBA Appeal*

Respondents appealed the city's denial of the site plan review to LUBA, raising two assignments of error. First, they contended that the city improperly added conditions of approval to the 2007 rezoning decision that amounted to "an impermissible collateral attack on the 2007 decision." Second, they argued that the city had failed to address respondents' argument that they had acquired a "vested right" to approval because of expenditures they made to comply with the 2007 conditions of approval, and that remand was required for the city to address that argument. Separately, Costco assigned error to the city's conclusion that respondents had not met the tree preservation requirements of SRC 808.030(a).[7]

As to respondents' first assignment of error, the parties presented LUBA with opposing views on the significance of certain representations made during the 2007 rezone and whether they foreclosed or permitted the proposed Costco on the subject property. Respondents argued that "a Costco store [was] an outright permitted use *** and that nothing in the 2007 Decision, Condition 14 or any other conditions of approval prohibit the store, because the city council [had, in 2007,] already determined that it is a 'retail shopping center' if it meets the size limitations in Condition 14." The city argued that its interpretation of condition 14 and the 2007 decision was entitled to deference and that, in any event, it correctly interpreted condition 14 and the 2007 decision to prohibit a Costco store.

Beginning with the deference argument, LUBA first noted that it did not see anything "in the city council's findings that purports to interpret Condition 14. *** Rather, any interpretational exercise that the city council engaged in appear[ed] to be an interpretation of statements in the

---

[7] Costco also assigned error to the city's failure to disclose *ex parte* contacts. For their part, petitioners also filed a cross-petition for review. LUBA's determination as to those issues is not before us on judicial review; therefore, we do not discuss them further.

findings that were adopted in support of the 2007 Decision, and interpretations of documents in the record of that proceeding." Then it reviewed case law from both LUBA and the Oregon appellate courts to conclude that deference was only required with regard to "a local government's interpretation of 'its comprehensive plan and land use regulations.'" (Quoting ORS 197.829(1).) Because neither the 2007 decision nor condition 14 were a comprehensive plan or land use regulation, LUBA reviewed for whether the city "improperly construed the applicable law." ORS 137.835(9)(a)(D).

On the merits, the city argued that, because the alleged representations made by respondents during the 2007 rezone proceedings provide context for the city's 2007 decision, they are now binding on respondents at the site plan stage. The city cited LUBA case law to support its contention that it was permitted to rely on those representations despite its failure to memorialize them in the express conditions of approval.

LUBA concluded that the cases relied on by the city were inapposite because they involved a local government's approval of *specific* development proposals rather than a zone change for *potential* developments, as was the case in the 2007 rezone. Thus, LUBA held that voluntary descriptions, statements, or representations made during the 2007 rezone proceedings were not binding at the site review stage unless they were memorialized in the conditions of approval.

Further, although it rejected respondents' "collateral attack" argument, LUBA agreed with respondents that the city improperly construed the 2007 decision to find that the Costco was prohibited. It explained:

> "Nothing in the language of the 2007 Decision, the conditions of approval attached to the 2007 Decision, or the findings adopted in support of the 2007 Decision prohibits a Costco store. Nothing in the statements and testimony provided by [respondents] represented that a Costco store would not be sited on the subject property. *Further, Condition 14 embodies the totality of the limits that the city placed on future development on the property*, and expressly limits only the type of future development to a 'retail shopping center,' and the size of future development to 299,000 square feet of GLA on the property."

(Emphasis added.) Finally, LUBA explained that, in any event, respondents did not make the unequivocal promises or representations that the city claimed it had in the 2007 rezone proceedings.

As to Costco's assignment of error regarding the tree removal permit, LUBA concluded that the city validly denied the application on the basis that it did not meet the requirements of SRC 808.030. Despite that conclusion, LUBA ultimately remanded the matter to the city on respondents' second assignment of error—that "the city failed to address a threshold argument from [respondents] that [they] pos-sesse[d] a vested right to approval of the site plan based on expenditures on off-site transportation improvements and dedicated land."

Petitioners now seek judicial review of LUBA's decision, raising a single assignment of error challenging LUBA's determination that the city improperly construed the 2007 decision to conclude that the proposed development did not meet the site plan approval criteria.

## II.   ANALYSIS

Petitioners ask us to reverse LUBA's decision to remand the city's denial of the site plan application in 2018 for two reasons.[8] First, petitioners argue that LUBA should have deferred to the city's interpretation of the 2007 rezon-ing decision. Second, petitioners contend that statements made by a plan/zone change applicant should become bind-ing on the applicant throughout the land use process. We take each of those arguments in turn.

Petitioners argue that LUBA was required to affirm the city's decision to deny the 2018 site plan because the city properly interpreted its own 2007 rezoning decision in the site review process and, therefore, none of the exclusion-ary criteria in ORS 197.829 apply to compel a remand. *See*

---

[8] Petitioners do not challenge LUBA's decision to remand for the city to con-sider the "threshold" vested rights argument.

Petitioners state that "LUBA was wrong in its decision to uphold the develop-er's First Assignment of Error for *three reasons*." (Emphasis added.) However, we see no substantive difference between their second and third reasons. Therefore, this opinion discusses the two arguments that petitioners develop.

*Siporen v. City of Medford*, 349 Or 247, 259, 243 P3d 776 (2010).[9]

Respondents counter by asserting that, in 2018, the city was not interpreting its comprehensive plan or land use regulations; rather, the city was applying the plain text of the 2007 rezone decision as it considered the site plan proposed by them in 2018. Thus, respondents argue that no deference was required, and LUBA properly remanded the city's decision under ORS 197.835(9)(a)(D).[10]

We review LUBA's decision for whether it is unlawful in substance. ORS 197.850(9)(a). We have interpreted that to mean whether LUBA's decision "represented a mistaken interpretation of the applicable law." *Mountain West Investment Corp. v. City of Silverton*, 175 Or App 556, 559, 30 P3d 420 (2001). We conclude that LUBA correctly interpreted the applicable law.

---

[9]   ORS 197.829 provides:

"(1) The Land Use Board of Appeals shall affirm a local government's interpretation of its comprehensive plan and land use regulations, unless the board determines that the local government's interpretation:

"(a) Is inconsistent with the express language of the comprehensive plan or land use regulation;

"(b) Is inconsistent with the purpose for the comprehensive plan or land use regulation;

"(c) Is inconsistent with the underlying policy that provides the basis for the comprehensive plan or land use regulation; or

"(d) Is contrary to a state statute, land use goal or rule that the comprehensive plan provision or land use regulation implements.

"(2) If a local government fails to interpret a provision of its comprehensive plan or land use regulations, or if such interpretation is inadequate for review, the board may make its own determination of whether the local government decision is correct."

[10]   ORS 197.835(9) provides, in part, that LUBA

"shall reverse or remand the land use decision under review if the board finds:

"(a) The local government or special district:

"(A) Exceeded its jurisdiction;

"(B) Failed to follow the procedures applicable to the matter before it in a manner that prejudiced the substantial rights of the petitioner;

"(C) Made a decision not supported by substantial evidence in the whole record;

"(D) Improperly construed the applicable law; or

"(E) Made an unconstitutional decision[.]"

We begin our analysis with ORS 197.829. That statute provides that LUBA "*shall affirm* a local government's interpretation of its comprehensive plan and land use regulations," unless LUBA finds that specified conditions are satisfied. (Emphasis added.) The parties do not contend that, in denying site plan approval, the city was interpreting its comprehensive plan, thus the issue reduces to whether the city was interpreting a land use regulation. ORS 197.015(11) defines "land use regulation" for purposes of ORS chapter 197 to mean "any local government zoning *ordinance*, land division *ordinance* \*\*\* or similar general *ordinance* establishing standards for implementing a comprehensive plan." (Emphases added.) Petitioners do not suggest that either the 2007 decision or condition 14 within that decision—which the city was interpreting in denying respondents' site plan approval—are ordinances. Nor do petitioners cogently explain why the 2007 decision or condition 14 are nonetheless land use regulations.[11] *See Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 701 n 2, 64 P3d 1193, *adh'd to as clarified on recons*, 187 Or App 472, 68 P3d 259 (2003) ("[I]t is not this court's function to speculate as to what a party's argument might be. Nor is it our proper function to make or develop a party's argument when that party has not endeavored to do so itself."). Therefore, we conclude that LUBA correctly concluded that the city's denial was not entitled to deference and LUBA's role, instead, was to review for legal error—that is, for whether the city "[i]mproperly construed the applicable law" under ORS 197.835(9)(a)(D).

---

[11] Petitioners make a passing reference to provisions of the Salem Revised Code. Their argument, as we understand it, goes as follows: SRC 300.820(a) provides that the city council "may impose conditions on land use actions." Those conditions of approval "shall be construed and enforced, in all respects, as provisions of the [Uniform Development Code (UDC)]." SRC 300.820(b). The UDC is the body of land use regulations for the City of Salem. *See* SRC 110.001; SRC 110.005. Thus, condition 14 in the rezone approval is a land use regulation, the interpretation of which was owed deference under ORS 197.829. We reject that argument. For purposes of ORS 197.829, the legislature defined "land use regulation" as an "ordinance." ORS 197.015(11). SRC 300.820(b) states that conditions of approval shall be *enforced as* provisions of the UDC, which is a compilation of land use regulations. It does not say that conditions of approval *are* land use regulations; it recognizes that they are not land use regulations and says that the city shall treat them as if they are for enforcement purposes.

We move to petitioners' next contention, that respondents made statements during the 2007 rezone process—specifically, statements indicating that the development would not have a regional draw—that were implicitly incorporated into condition 14. Those statements, petitioners argue, are now binding at the site plan review stage of the land use approval process, and the proposed Costco conflicts with those representations because Costco's membership is so large that it necessarily must be considered a "regional facility." To support that argument, petitioners cite to several LUBA cases. However, as explained below, we need not resolve those contentions here.

Even if we were to conclude that statements made during the rezone process *could* be binding on the developer during the site plan review, a question on which we express no opinion, the statements here were not unequivocal promises or representations. In support of their argument to the contrary, petitioners point to these statements that Pacific Realty made during the 2007 rezone process:

- "We're not creating something drawing for ten miles, we are responding to a market that exists."

- "This idea that we are pulling from all over Salem just isn't going to happen."

- "As at one of our community centers, architecture would be in scale with residential buildings as opposed to large boxes."

- "In contrast to what you may hear, this project would not be an outlet mall nor like it in size."

- "[General commercial (CG) zoning] allows for gasoline service stations—various other type of automotive services, and auto dealerships—out right permitted. The *** proposal is proposing none of those. They are in fact conditional uses of the CR zone and we're not asking for any conditional uses."

At the same time, respondents made other representations that cut against those statements. For example, respondents testified that they would seek "retail, drug store, [and] grocery" tenants, but that "you don't know exactly who's going to show up until you get there. They're

gonna do their own market studies, you're gonna have a group of people that are gonna come back and say you know we got an interest in there, you take a look at." Respondents also submitted a list of potential tenants that could move into the development and their associated square footage. Among those listed were Costco (150,000-200,000 square feet); grocery stores such as Safeway, Albertsons, Target, or Fred Meyer (45,000-200,000 square feet); and "soft goods" such as Kohl's and JC Penny (5,000-100,000 square feet). Petitioners cannot credibly claim that respondents pulled a "bait & switch" on the city when the record in 2006 and 2007 demonstrates that Costco was a potential tenant along with other potential tenants of similar size. Thus, even if petitioners were correct that unequivocal statements made during the 2007 rezone proceedings could become binding at later land use proceedings, the record here reflects that respondents made no such unequivocal promises to the city.

Accordingly, the express text of condition 14 contains the only relevant limitations on the types and extent of future development on the site. Those limitations require that the property be developed with a "retail shopping center," and that the maximum amount of GLA shall not exceed 299,000 square feet. Petitioners do not contend that either of those requirements were violated by the proposal.

## III.   CONCLUSION

For the foregoing reasons, LUBA did not err in concluding that condition 14 constituted the "totality of the limits that the city placed on future development on the property" and that the proposed development was in compliance with that condition.

Affirmed.